SIXTH DIVISION

October 12, 2001

No. 1-99-3885

CHICAGO HOUSING AUTHORITY, ) 

) 

Petitioner-Appellant, ) Appeal from the

)  Human Rights

v. )   Commission

)  

THE HUMAN RIGHTS COMMISSION, THE ) 

DEPARTMENT OF HUMAN RIGHTS, and ) Nos. 1989 CF 0055

NORMAN LASKO,   ) 1989 CF 1220

)

Respondents-Appellees. )

JUSTICE BUCKLEY delivered the opinion of the court:

Respondent Norman Lasko filed three charges of discrimination against his employer, petitioner Chicago Housing Authority (CHA), with the Equal Employment Opportunity Commission (EEOC) and respon-dent Illinois Department of Human Rights (IDHR).  After IDHR found substantial evidence of discrimination, respondent Illinois Human Rights Commission (Commission) filed a complaint against CHA.  Upon review of the charges, an administrative law judge (ALJ) found that CHA had discharged Lasko in a discriminatory manner in retaliation for Lasko having filed charges with the EEOC and IDHR.  The Commission adopted the ALJ's decision.

CHA now appeals, alleging that the ALJ improperly analyzed this case pursuant to a mixed-motive theory of discharge and erroneously shifted the burden of proof to CHA when in fact Lasko had never pled for relief on this basis.  CHA contends that this case should have been reviewed pursuant to the standards accompany-ing a pretextual theory of discharge, and because Lasko has not presented any credible evidence of a pretext, the Commission's decision should be reversed and Lasko's action dismissed.  Alterna-tively, CHA asks that we remand the cause for additional proceed-ings.  Conversely, Lasko argues that the ALJ's mixed-motive analy-sis was proper and that CHA did not present any proof that it would have discharged Lasko for nonretaliatory reasons.  The Commission and IDHR have adopted Lasko's appellate brief and arguments.  For the following reasons, we agree with Lasko and affirm the Commis-sion's order and decision.

BACKGROUND

The following facts are largely taken from the findings of fact contained in the ALJ's decision.  

Lasko worked as a senior attorney for CHA's legal department, beginning in 1975.  He presented evidence that from 1975 to August 1987, some 14 performance evaluations rated his work as satisfac-tory to good to even excellent and he was recommended for salary increases.  In February 1987, four female attorneys at CHA filed charges of sexual discrimination with the EEOC.  Soon after, CHA general counsel James Thomas sent a memo to the legal department staff asking that employees not communicate any information to these four female attorneys about CHA employment or labor matters, as a means to protect the interests of CHA and avoid any ethical/legal problems.  Lasko believed that this was an implicit loyalty warning from CHA to its employees.  

In early February 1988, Lasko was named in interrogatories as a witness on behalf of the four female attorneys suing CHA.  About this time, new general counsel Wilbert Allen began giving Lasko extra duties which increased his caseload.  At the end of February 1988, the four female attorneys were suspended and eventually discharged from CHA.  

In March 1988, Allen sent Lasko a memo reprimanding him for poor research work.  On March 30, 1988, Richard Anderson, Lasko's prior supervisor, wrote a memo to Loretta Eadie-Daniels, Lasko's current supervisor, claiming that Lasko was at fault for not filing a timely brief in a CHA case.  When Eadie-Daniels questioned Lasko about Anderson's contentions, Lasko pointed out that Sue Ann Rosen, one of the four female attorneys, was in charge of that case until her discharge, at which time it was to be handled by Anderson and another attorney, Jacqueline Cox.  However, Eadie-Daniels deter-mined that Lasko was at fault.  In May 1988, she made several efforts to meet with Lasko to discuss his work performance, including calling him at home while he was on sick leave.  On May 24, 1988, she wrote a memo to Allen recommending Lasko's discharge for insubordination because she felt Lasko deliberately avoided two scheduled meetings with her for May 19 and May 23.  

Lasko returned to work on June 13, 1988.  At some point, he asked Dorothy Snow, a CHA office manager and Allen's administrative assistant, for a telephone amplifier to accommodate his hearing handicap.  Neither Snow nor CHA ever provided Lasko with an ampli-fier.  Among other reasons, Lasko was told that if he received one, CHA would have to provide one for every worker.  On June 17, 1988, Eadie-Daniels again asked Allen to discharge Lasko for insubordina-tion, lack of professional attitude and a consistent pattern of failing to complete his work assignments.  On June 21, 1988, Lasko asked Eadie-Daniels if he could meet with her to resolve these problems.  Also on this date, Lasko filed his first charge against CHA with the EEOC, alleging that CHA had begun retaliating against him for supporting the four discharged female attorneys.  

Lasko testified before the ALJ that on June 22, 1988, while he was talking to his secretary, Barbara Klotz, Allen said to him: " 'You filed an EEOC charge.  Something ought to be done.' "   

Lasko again requested an accommodation from CHA for his hearing handicap.  On July 8, 1988, Lasko filed his second charge, this time with IDHR, alleging that, in addition to threatening dismissal because of his assistance to the four female attorneys, CHA was discriminating against him because of his physical handicap.  This charge also included a claim of discrimination based on a mental handicap (stress-related bipolar disorder), but Lasko later voluntarily dismissed this contention.

Several memos were then exchanged among Lasko, Eadie-Daniels, Allen and other CHA superiors regarding further alleged incidents, including Lasko's confronting Snow in an angry voice and reading incoming CHA mail without authority.  On July 28, 1988, Allen gave Lasko a final disciplinary notice, citing five reasons for discharge:  (1) insubordination towards supervisor Eadie-Daniels, (2) disruptive behavior for yelling at Snow, (3) reviewing incoming CHA mail without authority, (4) a continued pattern of unsatisfac-tory performance and failing to complete work assignments, and (5) use of racially offensive language.  Allen clarified that the first three reasons were submitted by Eadie-Daniels while he included the last two.  The fifth reason, Allen testified, arose from an inci-dent when he, Lasko and several others were discussing the hiring of a new CHA general counsel.  Allen (African-American) testified that during this discussion, Lasko (Caucasian) said to him and Anderson (African-American):  " ' The next General Counsel is probably going to be another nigger from City Hall.' "  After learning of Allen's recommendation to terminate him, Lasko filed a grievance with CHA alleging that he was not given an opportunity to qualify for eight positions in the legal department.

On July 29, 1988, Allen sent the disciplinary notice to, among others, his supervisor and director of human resources, Donald Pettis, who assigned it to Edward Gale, a CHA labor relations representative.  On August 8, 1988, Lasko filed another grievance with CHA challenging the notice.  Gale investigated Allen's request to terminate Lasko and on September 7, 1988, recommended approval of the termination, finding that "Lasko's behavior can only be described as unprofessional, insubordinate, disruptive and unsatis-factory from a performance standpoint."  Pettis agreed, and on September 14, 1988, CHA notified Lasko that he was being terminated for "his poor work performance, insubordination, disruptive behav-ior, use of racially offensive language and reviewing confidential mail without authorization."  On September 19, 1988, Lasko filed his third charge against CHA, alleging dismissal in retaliation for having filed the prior charges with the EEOC and IDHR.

As the cause proceeded through discovery, CHA sought the production of Lasko's mental health records.  In February 1991, the ALJ entered an order preventing CHA from obtaining these records because Lasko's mental health was not at issue.  In April 1991, CHA again tried to obtain these records by subpoenaing them from Lasko's physician.  Again, the ALJ held that CHA could not do this and granted Lasko's motion 
in  limine
 to preclude the introduction and reference to any medical matters during the cause.  However, at the public hearing on Lasko's charges in early 1997, CHA tried to cross-examine Lasko regarding mental stress.  Upon Lasko's objec-tion, the ALJ declared that "this, if it is relevant, *** would be more appropriate in [CHA's] defense, *** not at this point in time."

At the conclusion of the hearing, the ALJ determined that the preponderance of the evidence supported one of Lasko's two retalia-tion charges, but not the other retaliation charge or the physical handicap discrimination charge.  

First, regarding Lasko's charge of discrimination based on his physical handicap (hearing loss), the ALJ found that Lasko "presen-ted a 
prima  facie
 case of physical handicap discrimination," but that CHA "articulated a legitimate, non-discriminatory reason for its treatment of" Lasko regarding his claimed handicap, and that Lasko "failed to prove by a preponderance of the evidence" that CHA's "articulated reason *** was unworthy of credence."  Therefore, the ALJ recommended that the Commission rule for CHA and against Lasko on the physical handicap discrimination claim. 

Though not entirely clear from the record, it seems that the ALJ next found that Lasko, in a similar manner, failed to support his first allegation of retaliation, that is, that CHA was haras-sing him because he assisted the four discharged female attorneys in their sexual discrimination suit.  

However, spending the majority of its time addressing Lasko's second allegation of retaliatory discharge (in response to his filing of prior charges with the EEOC and IDHR), the ALJ recom-memded that the Commission rule for Lasko and against CHA.  The ALJ found that Lasko "presented direct evidence of unlawful discrimina-tion (retaliation)," because his "filing of charges with EEOC and [IDHR] was a significant factor in the decision to discharge him, thereby establishing 'unlawful discrimination.' "  The ALJ further concluded that CHA had "failed to prove by a preponderance of the evidence" that Lasko "would have been discharged if the prohibited factor [Lasko's filing of charges] had not been considered."

In the discussion of his findings, the ALJ stated that Lasko presented direct evidence raising an inference of retaliation. The ALJ did not believe Allen's denial of his statement to Lasko "[y]ou filed an EEOC complaint.  Something ought to be done," nor Allen's version of the incident in which he claimed Lasko used a racial epithet.  Instead, the ALJ chose to believe Lasko in both instan-ces.  The ALJ found that while CHA articulated legitimate, non-discriminatory reasons for termination, Lasko established that some of these reasons were pretextual and discriminatory.  The ALJ espe-cially focused on Allen, finding that he " 'loaded up' " the final disciplinary notice by adding two reasons to Eadie-Daniels' recom-mendations and that Allen waited to terminate Lasko until Lasko had filed charges with the EEOC and IDHR.  This behavior was indicative of Allen's "retaliatory mindset" and "retaliatory animus."  

Holding that because both discriminatory and nondiscriminatory reasons existed for Lasko's discharge, the ALJ declared that his analysis of this part of the cause was to proceed "under a mixed[-] motive case," with CHA bearing the burden of proving that it still would have terminated Lasko had it not considered "the prohibited factor."
  Because the ALJ held that CHA did not meet this burden, CHA was liable for its retaliatory discharge of Lasko and owed him lost wages, deferred compensation, pension benefits and other fees and costs.  On October 26, 1999, the Commission adopted the ALJ's decision.

CHA now appeals.  Most primarily, it contends that Illinois law does not recognize the mixed-motive theory of recovery in retaliation claims which shifts the burden of proof to the employer.  Even if Illinois does so recognize this theory, CHA believes that the ALJ should not have shifted the burden of proof to it because Lasko initially had the burden to plead this theory in his complaint.  Since Lasko did not plead this theory, CHA claims it did not have notice that it should defend under it and, thus, the Commission could not render a decision based on it nor could Lasko recover under it.  Finally, CHA also contends that the ALJ erred by refusing to allow it to discover Lasko's mental health records and to cross-examine on the basis of his mental impairment (stress-related bipolar disorder).  

ANALYSIS

A. Standard of Review

Initially, both parties to this appeal grapple with the appropriate standard of review.  For purpose of clarity, we should begin our discussion with this threshold matter.

This cause was brought under the Illinois Human Rights Act (775 ILCS 5/1-101 
et  seq.
, (West 1998)) which provides that we must sustain the Commission's final findings of fact unless we determine them to be contrary to the manifest weight of the evidence.  
Zaderaka v. Illinois Human Rights Comm'n
, 131 Ill. 2d 172, 180 (1989).  In making this determination, we must remember that the findings and conclusions of the Commission on all questions of fact are presumed 
prima facie
 true and correct
 and merit deference.  
Zaderaka
, 131 Ill. 2d at 180; 
Illinois J. Livingston Co. v. Human Rights Comm'n
, 302 Ill. App. 3d 141, 151 (1998).  We, as a review-ing court, may not interfere with the Commission's discretionary authority  
Board of Education of Schaumburg Community Consolidated School District No. 54 v. Illinois Educational Labor Relations Board
, 247 Ill. App. 3d 439, 453-54 (1993).  Therefore, we may not substitute our judgment for that of the Commission, nor may we reweigh any of the evidence presented at the hearing, resolve any factual inconsistency or settle any issue of credibility.  
Zaderaka
, 131 Ill. 2d at 180;
 
Kenall Manufacturing Co. v. Human Rights Comm'n
, 152 Ill. App. 3d 695, 703 (1987); see 
Board of Education
, 247 Ill. App. 3d at 454 (reviewing court's "sole function is to ascertain whether the findings of the [Commission] are contrary to the manifest weight of the evidence").  While its conclusions of law do not necessarily bind us, we cannot reverse the Commission's decision simply because 
the opposite conclusion is reasonable or because we might have ruled differently.  
Board of Education
, 247 Ill. App. 3d at 454; see  
Robbins v. Board of Trustees of the Carbondale Police Pension Fund
, 177 Ill. 2d 533, 538 (1997).  Instead, in order to find that the Commission's decision is truly contrary to the manifest weight of the evidence, we must conclude, "after viewing the evidence in the light most favorable to the [Commission]," that "no rational trier of fact could have agreed with the [Commission]'s decision."  
Board of Education
, 247 Ill. App. 3d at 454 (Commission's decision is against manifest weight only when opposite conclusion is clearly evident from record); see also 
Rodriguez v. Bagnola
, 297 Ill. App. 3d 906, 915 (1998), quoting 
Sheehan v. Board of Fire & Police Commissioners of the City of Des Plaines
, 158 Ill. App. 3d 275, 287 (1987) (Commission's decision is against manifest weight only when " 'all reasonable and unbiased persons, acting within the limits prescribed by the law and drawing all inferences in support of the finding, would agree that the finding is erroneous and that the opposite conclusion is clearly evident' ").

B.  Illinois Law and Mixed-Motive Theory

The first issue CHA presents to this court is whether, pursuant to the Illinois Human Rights Act, Illinois recognizes the mixed-motive theory of discharge in retaliatory discrimination cases, a theory which shifts the burden of proof to the employer.  The resolution of this issue is foremost to the instant case, for, as CHA argues, if Illinois does not recognize this theory, the ALJ used prohibited law in making his decision and erroneously shifted the burden to CHA, the employer.  If so, we must reverse the Commission's decision outright without considering other issues.  

However, contrary to CHA's contentions, ample law, both federal and state, clearly indicates that Illinois 
does
 recognize the mixed-motive theory.  Moreover, shifting the burden of proof to the employer, as the ALJ did in the instant case, was not only proper but one of this theory's most unique tenants.

1.  Federal Law

Though unusual, we begin with a review of the mixed-motive theory under federal law, as both parties to this cause rely on such cases for their arguments.

We analyze employment discrimination causes brought under the Illinois Human Rights Act, as is the instant one, according to the "framework set forth in United States Supreme Court decisions addressing claims under Title VII of the Civil Rights Act of 1964.
"  
Lalvani v. Illinois Human Rights Comm'n
, No. 1-99-3283, slip op. at 26 (July 31, 2001) (our Supreme Court, in 
Zaderaka
, 131 Ill. 2d at 178, adopted the Supreme Court's method of analysis); 
Livingston
, 302 Ill. App. 3d at 152. The principal case laying down this framework is 
Price Waterhouse v. Hopkins
, 490 U.S. 228, 260-61, 104 L. Ed. 2d 268, 295, 109 S. Ct. 1775, 1796 (1989) (O'Connor, J., concurring).
(footnote: 1)  
Price Waterhouse
 originally was a Title VII action, with the plaintiff-employee offering specific evidence that gender animus was a motivating, and forbidden, reason in the defendant-employer's decision to terminate her employment.  
(footnote: 2)
 It was in this case that the Court recognized two separate and entirely different methods available to analyze retaliatory discharge cases.  The more common method is the three-part pretext analysis as established in 
McDonnell Douglas Corp. v. Green
, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)
.  Under this analysis the plaintiff-employee must first establish a 
prima  facie
 case, a modest burden since he may do so using indirect evidence.  
McDonnell Douglas
, 411 U.S. at 802, 36 L. Ed. 2d at 677, 93 S. Ct. at 1824.  Second, the burden of production, but not of persuasion, shifts to the defendant-employer to articulate, not prove, a legitimate, nondiscriminatory reason for discharge.  
McDonnell Douglas
, 411 U.S. at 802, 36 L. Ed. 2d at 678, 93 S. Ct. at 1824.  If the defendant succeeds, the plaintiff must then show that the defendant's reason was merely a pretext or sham.  
McDonnell Douglas
, 411 U.S. at 804, 36 L. Ed. 2d at 679, 93 S. Ct. at 1825.  To this end, the plaintiff retains the ultimate burden of persua-sion at all times under the pretext method.  
Fernandes v. Costa Brothers Masonry, Inc.
, 199 F.3d 572, 581 (1st
 Cir. 1999).

The Court recognized an equally effective method, called the mixed-motive theory, which a plaintiff may use in trying to con-vince the trier of fact that his employer used an impermissible criterion in discharging him.  Under this two-part analysis, the plaintiff must first show, through direct proof, that the illegiti-mate factor had a motivating or substantial role in the employment decision.  
Price Waterhouse
, 490 U.S. at 244, 104 L. Ed. 2d at 284, 109 S. Ct. at 1787.  The plaintiff who accomplishes this will pre-vail, unless his employer can prove that it would have reached the same decision (
i.e.
, still would have fired the plaintiff) had it not considered the impermissible factor.  
Price Waterhouse
, 490 U.S. at 244-45, 252, 104 L. Ed. 2d at 284, 289, 109 S. Ct. at 1787-88, 1792 (legitimate reason "was present" at time of making decision and, "standing alone, would have induced [employer] to make the same decision").

The mixed-motive method differs from the pretext analysis in several respects.  Initially, the mixed-motive method can be more difficult for the plaintiff to use.  
Fernandes
, 199 F.3d at 580 
(mixed-motive method is restricted to cases where the employee "can demonstrate with a high degree of assurance" that both legitimate and illegitimate reasons were involved); 
Tyler
, 958 F.2d at 1180-81 (burden on the plaintiff is higher in mixed-method approach than pretext approach).  Employment discrimination can oftentimes exert itself in subtle ways.  
Fernandes
, 199 F.3d at 580.  Yet to use the mixed-motive method, the plaintiff must show " 'direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision.' "  
Fernandes
, 199 F.3d at 580, quoting 
Price Waterhouse
, 490 U.S. at 277, 104 L. Ed. 2d at 305, 109 S. Ct. at 1805 (the availability of the mixed-motive analysis depends on quality of the plaintiff's evidence).  

However, if the plaintiff can present this "more focused proof of discrimination," his cause becomes easier, as he sheds the burden he would otherwise retain under the pretext approach.  
Tyler
, 958 F.2d at 1185-86.  And this is why the approach used has an important effect:  in the mixed-motive analysis, the burden of persuasion completely shifts away from the plaintiff and to the employer to prove it still would have fired the plaintiff absent consideration of the impermissible motive.  
Thomas v. National Football League Players Ass'n
, 131 F.3d 198, 203 (D.C. Cir. 1997) (this is both a shifting of the ultimate burden of persuasion and the employer's affirmative defense).  Moreover, whereas there is only either lawful or unlawful motivation for discharge in pretext cases, there can be both types in mixed-motive cases.  
Ostrowski v. Atlantic Mutual Insurance Cos.
, 968 F.2d 171, 185 (1992).  There-fore, the plaintiff is not obligated to show that a legitimate reason was the true reason for discharge or that the employer used a pretext.  
Ostrowski
, 968 F.2d at 185.  All he must show is that the employer considered some unlawful motive in making its decision.
  

2.  State Law

Illinois state courts, and most critically our very bench, have clearly and consistently recognized what the federal courts have:  that the mixed-motive method of analyzing and deciding adverse employment claims is alive and well.  
Lalvani
, slip op. at 26-27 (the "burden of proof is different if the plaintiff proceeds under the direct-evidence approach");  
Livingston
, 302 Ill. App. 3d at 152 (recognizing two ways an employee may prove discrimination:  through presenting direct
 
or indirect evidence); 
Kenall
, 152 Ill. App. 3d at 701 (same); 
Southern Illinois Clinic, Ltd. v. Human Rights Comm'n
, 274 Ill. App. 3d 840, 847 (1995) (same
).  We have chosen to call this method by an alternative name at times--the dual-motive theory--but its tenents are still the same.  
City of Burbank v. Illinois State Labor Relations Board
, 128 Ill. 2d. 335, 347 (1989); 
Board of Education
, 247 Ill. App. 3d at 460.  And as mentioned above, we too have noted that while the pretext method is more common, the mixed-motive method is no less viable.  
Southern Illinois Clinic
, 274 Ill. App. 3d at 847.

Just as in federal law, we have defined mixed-motive cases as those where the employer relies on both legitimate and illegitimate reasons for the employee's discharge.  
City of Burbank
, 128 Ill. 2d at 346-47 (case where the employer advances and relied upon legitimate reasons for discharge is analyzed under mixed-motive theory).  The plaintiff-employee must present direct evidence that the defendant-employer
 considered an illegitimate factor, among others, in deciding to fire him.  
Board of Education
, 247 Ill. App. 3d at 460-61 (the employee's evidence must go beyond inference of discrimination to establish "clear nexus" between impermissible factor and discharge).  Once the employee establishes this, the burden of proof then shifts to the employer to show it would still have fired the employee even if it had not considered the illegiti-mate factor.  
City of Burbank
, 128 Ill. 2d at 346-47; 
Board of Education
, 247 Ill. App. 3d at 461.   

Our supreme court has set the foundation for one very important concept in the mixed-motive analysis.  Again, the employ-er's motivation for firing the employee is the central issue in these cases.  Motive is a question of fact.  
City of Burbank
, 128 Ill. 2d at 345.  Since making final, factual determinations is for the ALJ and the Commission, our court has stated that we must accept their findings of an employer's discriminatory motivation as long as those findings are supported by substantial evidence in the record.  
City of Burbank
, 128 Ill. 2d at 345.

One particular case that we should discuss here, both because of its recency and its applicable method of analysis, is 
Lalvani v. Illinois Human Rights Comm'n
, No. 1-99-3283 (July 31, 2001).  The plaintiff, an employee at Cook County hospital, filed a complaint with the Commission alleging that he had been harassed for, among other things, filing grievances against his employer.  Recognizing that a plaintiff may prove employment discrimination in one of two ways--through direct or indirect methods of proof--we reviewed the case, as had the ALJ, under the mixed-motive theory, citing 
Price Waterhouse
.
(footnote: 3)  
Lalvani
, slip op. at 27.  Following the same analysis just discussed, we reaffirmed that an employee presenting direct evidence that his employer placed substantial reliance on a prohibited factor in deciding to fire him may proceed under this approach.  
Lalvani
, slip op. at 27.  Moreover, we made clear that, if the employee is successful in doing this, the burden of proof shifts to the employer to prove that it would have still decided to fire him even if it had not considered the prohibited factor.  
Lalvani
, slip op. at 27-28 ("[t]hus, where there is direct evidence of substantial reliance on an illegitimate criterion, as opposed to the indirect evidence of the [pretext] approach, the employer has not merely a burden of production but a burden of persuasion").

3.  Mixed-Motive Analysis and the Instant Case

The ALJ and the Commission concluded that Lasko's filing of charges against CHA with the EEOC and IDHR "was a significant factor in the decision to discharge him, thereby establishing 'unlawful discrimination.' "  Moreover, the ALJ and the Commission found that Lasko presented direct evidence of retaliatory discrimi-nation and that CHA failed to prove that it would have discharged Lasko had it not considered his prior charges.  Upon review of the record and the ALJ's reasoning, we find that these conclusions are not against the manifest weight of the evidence.

In his discussion, the ALJ reviewed both the pretext and the mixed-motive approach and chose to use the latter.  Under the first prong of his analysis, the ALJ determined that Lasko successfully presented direct evidence of retaliation.  The ALJ found credible the testimony of several of Lasko's former supervisors, as well as the presentation of many of Lasko's past evaluations, that Lasko was a good worker.  The ALJ also found Lasko's own testimony to be very credible, especially regarding which projects he was responsible for under Eadie-Daniels and those events in the workplace that led to his termination.

Under the second prong of the mixed-motive analysis, the ALJ determined that CHA failed to demonstrate that it would have fired Lasko even had it not considered his prior charges.  Significantly, the ALJ found the majority of Allen's testimony unbelievable.  For example, as to the incident on June 22, 1988, one day after Lasko filed his first complaint against CHA, the ALJ did not believe Allen's denial of the statement to Lasko "[y]ou filed an EEOC complaint.  Something ought to be done."  Moreover, the ALJ did not believe Allen's testimony that Lasko used a racial epithet, especially because it was undocumented and uncorroborated.  Yet Allen cited this as one of the reasons for Lasko's discharge.

The ALJ also found CHA's substantial negative reliance on Lasko's prior charges in the very sequence of events that led to Lasko's termination.  As early as May 24, 1998, Eadie-Daniels wrote a memo to Allen recommending Lasko's suspension and/or discharge for insubordination.  Allen did nothing.  In June 1988, Eadie-Daniels again asked for Lasko's discharge for lack of professional attitude.  Allen again did nothing.  It was not until July 28, 1988, that Allen finally began the termination process--soon 
after
 Lasko filed his charges against CHA with the EEOC on June 21, 1988, and with IDHR on July 8, 1988.  And, of course, in between these dates came Allen's statement, "[s]omething ought to be done."

Add to this the ALJ's conclusion that Allen " 'loaded up' " the final disciplinary notice with reasons in addition to Eadie-Daniel's, reasons that the ALJ found "necessary and significant to" the termination decision, but characteristic of CHA's "retaliatory animus."  Furthermore, the ALJ determined that no one at CHA with the power to decide to terminate Lasko ever testified that Lasko's discharge would have been approved had the prohibited factor not been considered.

In sum, the ALJ found that Lasko "presented credible, direct evidence of retaliation," and thus met his burden.  While CHA may have considered some legitimate reasons (
i.e.
,
 those of Eadie-Daniels) for discharge, it also considered the illegitimate factor of Lasko's having filed prior grievances and was "infected with retaliatory animus."  Thus, Lasko established a mixed-motive case, and the burden of proof shifted to CHA to demonstrate it would have fired Lasko without considering this factor.  The ALJ and the Commission, upon review of the evidence presented, concluded that CHA did not meet this burden.  

Because, after viewing the entire record in the light most favorable to the Commission, we cannot conclude that a rational trier of fact would have held contrary to the ALJ here, we hold that the ALJ and the Commission's finding that CHA failed to satisfy its burden by a preponderance of the evidence is not against the manifest weight of the evidence.

C.  Notice under Mixed-Motive Theory 

CHA alternatively argues that, even if we accept the mixed-motive approach and shift the burden of proof to it as the employer, Lasko cannot recover because he did not initially plead this theory, as was his burden.  Since Lasko did not so plead, CHA claims it did not have notice that the mixed-motive approach would be used and, accordingly, the ALJ should not have applied it to the facts because this caused prejudice.  We disagree.

While it is true that Illinois is a fact-pleading jurisdiction (
Lempa v. Finkel
, 278 Ill. App. 3d 417, 424 (1996)), the United States Supreme Court already addressed the issue of whether a plaintiff-employee must provide notice to the defendant-employer that the mixed-motive approach will be used.  It stated in 
Price Waterhouse
: 

nothing in this opinion should be taken to suggest that a case must be correctly labeled as either a 'pretext' case or a 'mixed-motives' case from the beginning ***; indeed, we expect that plaintiffs often will allege, in the alternative, that their cases are both."  490 U.S. at 247 n.12, 104 L. Ed. 2d at 285 n.12, 109 S. Ct. at 1789 n.12.  

Several other decisions also reaffirm that the employee has no burden to plead a mixed-motive approach.  
Fernandes
, 199 F.3d at 581 (because the employee does not know what discovery will produce or how a court will interpret evidence, he may proceed under both theories, for it is reviewing body's job to "channel the case into one format or the other *** based on the availability or unavaila-bility of direct evidence");
 
Fuller v. Phipps
, 67 F.3d 1137, 1143 n.2 (4th
 Cir. 1995) (the employee does not have to label his case as either pretext or mixed-motive; the reviewing body makes this determination after evaluating the evidence presented); 
Ostrowski
, 968 F.2d at 185 (reviewing body decides which theory to apply). 

Nor must the employee, or even the reviewing body for that matter, provide notice to the employer any time before or during the cause that the mixed-motive, as opposed to the pretext, approach will be used.  
Thomas
, 131 F.3d at 205 (such a premise has been called "ridiculous").  Instead, it is only logical that if the employer had evidence showing that it would have fired the employee notwithstanding the prohibited factor, "it would be foolish not to introduce" it "regardless of whether the case fell under" the pretext or the mixed-motive theory.  
Thomas
, 131 F.3d at 205-06.  The Supreme Court in fact intended for the mixed-motive framework to be a flexible, logical way to analyze employment discrimination, with "no formal notice of burden-shifting *** required."  
Thomas
, 131 F.3d at 206. 
  

In the instant case, then, contrary to CHA's argument, Lasko was not required to plead at the outset that he would proceed on the mixed-motive theory.  In fact, there was no way for Lasko to know at the pleading stage whether the ALJ and the Commission would perceive the evidence he would present as direct or indirect.  Which method to use was for the ALJ and the Commission to decide at some point during the proceedings.  In fact, the ALJ chose to evaluate Lasko's handicap discrimination charge and his first allegation of retaliation (CHA harassment for his assistance to the four female attorneys) using the pretext approach because Lasko presented only indirect evidence of CHA's discrimination regarding these events.  

However, the ALJ evaluated Lasko's second allegation of retaliation (in response to his filing of prior charges with the EEOC and IDHR) according to the mixed-motive approach.  The ALJ chose to do so because Lasko presented direct evidence that CHA considered his filing of charges, the prohibited factor, against him when deciding to terminate him.  It was not Lasko's burden to warn CHA that the ALJ would do this.  That CHA now claims it somehow suffered prejudice and surprise is misguided.  Even if CHA really believed only the pretext approach would be applied, it still should have introduced any evidence it had which tended to show that it would have fired Lasko regardless of the prohibited factor, in order to rebut Lasko's requirement of proving a 
prima   facie
 case under that theory.  That CHA did not present such evidence is indicative of either the nonexistence of such evidence or of foolishness.  Whatever the case, CHA was not prejudiced.   

D.  Remaining Issues

Finally, CHA claims that the ALJ and the Commission erred by barring cross-examination of Lasko's mental health at the hearing.  CHA argues that it sought to attack Lasko's perception and memory of the events leading to his termination, especially regarding Allen's "something ought to be done" statement.  

CHA relies heavily on 
People v. Helton
, 153 Ill. App. 3d 726, 733 (1987), for the proposition that a witness' mental health history is a permissible area of impeachment and can be used to attack credibility.  CHA then cites 
Novak v. Rathnam
, 106 Ill. 2d 478, 484-86 (1985), to conclude that, because Lasko's original charge included an allegation of discrimination based on mental handicap, he waived any right to confidentiality.  Again, we disagree.

While, in general, Lasko's mental health history is relevant to his credibility as a witness, CHA, as the party seeking to introduce this evidence, bore the burden of establishing its  relevance.  
People v. Plummer
, 318 Ill. App. 3d 268, 279 (2000)
.  From the record, it is clear that the ALJ did not necessarily bar CHA from cross-examining Lasko about his mental health, but simply limited the cross-examination.  As the ALJ stated, CHA had not demonstrated the relevancy of the mental health questions it sought to ask.  The ALJ specifically told CHA it could refer to Lasko's mental health when it presented its defense.

Moreover, we have previously stated in several similar cases our discomfort in allowing the disclosure of mental health records.  See 
Plummer
, 318 Ill. App. 3d at 280 (and cases cited therein).  Statutorily, the Mental Health and Development Disabilities Confidentiality Act (740 ILCS 110/1 
et  seq
. (West 1996)) (Act) was intended to maintain the confidentiality of mental health records except in specific circumstances, which have become narrowly drawn.  
Sassali v. Rockford Memorial Hospital
, 296 Ill. App. 3d 80, 84-85 (1998).  Section 10(a)(1) of the Act allows for the disclosure of mental health records in an administrative proceeding, but only if the patient introduces his mental condition as part of his claim.  
740 ILCS 110/10(a)(1) (West 1996).  However, this same section requires that before disclosure, the ALJ must first make several findings concerning the records' relevancy, probative value, undue prejudice, inflammatory content and general admissibility.  740 ILCS 110/10(a)(1) (West 1996).

First, we should conclude that, even if Lasko had introduced his mental condition as a claim, CHA has presented no evidence to show that the ALJ made the specific and necessary findings that section 10(a)(1) requires before mental health evidence can be  allowed.  In fact, the ALJ ruled several times before (in discovery and at the CHA's motion 
in limine
) and during the hearing that questioning Lasko about his mental health was improper.  Thus, disclosure at the hearing would not have been appropriate.  See 
Sassali
, 296 Ill. App. 3d at 83-84.

Second, and more significant, we should conclude that Lasko did not place his mental health at issue in the proceedings simply by alleging a charge of discrimination based on his mental stress/bipolar disorder in his original complaint, nor did he waive his privilege of confidentiality.  As the holder of this privilege, Lasko could have waived it if he had affirmatively placed his mental health at issue.  
Sassali
, 296 Ill. App. 3d at 83; see 
Novak
, 106 Ill. 2d at 484.  As CHA properly quotes from 
Novak
, 106 Ill. 2d at 486, "a waiver of the privilege involved in a prior proceeding will be regarded as a waiver of the privilege in a subsequent proceeding.
"

However, what CHA fails to account for is that there was no "prior proceeding" in which Lasko waived his privilege.  Lasko did assert a claim that involved his mental health, but he amended the charge and withdrew the claim completely long before the cause was even addressed by the ALJ.  As early as February 1991, the ALJ declared that Lasko's mental health was not at issue.  While Lasko's mental health had the potential of becoming an issue, it was not so by the time the hearing, the only proceeding in this cause, began.  Therefore, we should conclude that, as no waiver occurred, the ALJ properly found the disclosure of Lasko's mental health records and cross-examination on this topic irrelevant and inappropriate.

CONCLUSION

In sum, we find that the ALJ and the Commission properly used the mixed-motive method of analyzing Lasko's employment discrimina-tion claim.  Lasko was not required to inform CHA that this method would be used, and CHA was not prejudiced in any way.  Lasko presented direct evidence that CHA placed substantial negative reliance on the fact that he filed charges against CHA with the EEOC and IDHR in deciding to discharge him.  The burden of proof then shifted to CHA to show that it would have discharged Lasko despite consideration of this retaliatory reason, but CHA failed to sustain this burden.  Therefore, we conclude that the final deci-sion of the ALJ and the Commission in favor of Lasko and against CHA was not against the manifest weight of the evidence.

Accordingly, the Commission's final order and decision are affirmed.

Affirmed.

Gallagher, P.J., and O'Brien, J., concur.

FOOTNOTES
1:
As often happens, the Court split in deciding 
Price Waterhouse
 and the justices in essence created four separate opinions.  See 
Tyler v. Bethlehem Steel Corp.
, 958 F.2d 1176, 1182 (2d Cir. 1992).  However, it is clear that a majority endorsed both the mixed-motive theory and its burden-shifting framework.  
Tyler
, 958 F.2d at 1183.  Our circuit has also recognized that discrimination claims may fall under two different frameworks, depending on whether the evidence presented is direct or indirect.  
Franzoni v. Hartmarx Corp.
, No. 99-C4898 (N.D. Ill. March 12, 2001); see 
Dunn v. Nordstrom
, 260 F.3d 778 (7th Cir. 2001).  

2:
3:
Price Waterhouse
 has been modified by statute (42 U.S.C. §§2000e-2(m), 2000 e-5(g)(2)(B)(i) (1994).  This modification, however, concerns the types of relief that may be granted to a plaintiff-employee and does not affect the holding of the case as discussed above.