# Illinois Official Reports

## Appellate Court

*Schnitker v. Springfield Urban League, Inc.*, 2016 IL App (4th) 150991

| | |
|---|---|
| Appellate Court Caption | JAMIE SCHNITKER, Plaintiff-Appellee, v. SPRINGFIELD URBAN LEAGUE, INC., Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-15-0991 |
| Filed | November 22, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 11-L-170; the Hon. Jack D. Davis II, Judge, presiding. |
| Judgment | Reversed; cause remanded for further proceedings. |
| Counsel on Appeal | Geri Lynn Arrindell, John L. Gilbert, and Timothy C. Sansone (argued), of Sandberg Phoenix & Von Gontard P.C., of St. Louis, Missouri, for appellant.<br><br>Colleen R. Lawless (argued), of Londrigan, Potter & Randle, P.C., of Springfield, for appellee. |
| Panel | JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion.<br>Justices Steigmann and Appleton concurred in the judgment and opinion. |

**OPINION**

¶ 1    In June 2015, plaintiff, Jamie Schnitker, filed a second amended complaint, alleging defendant, Springfield Urban League, Inc., failed to rehire her for a teaching position after illegally discriminating against her based on her race and religion in violation of the Illinois Human Rights Act (Act) (775 ILCS 5/1-101 to 10-104 (West 2010)). The following month, plaintiff prevailed in a jury trial, where she was awarded $100,000 in damages.

¶ 2    On appeal, defendant argues the trial court erred by tendering three of plaintiff's proposed jury instructions related to the Act, asserting those instructions inaccurately stated the law. For the following reasons, we reverse and remand for further proceedings.

## I. BACKGROUND
### A. Factual Overview

¶ 5    From September 1997 until May 2010, plaintiff was a teacher for defendant's Jacksonville Head Start facility. Plaintiff is Caucasian and of a non-Pentecostal religion. In March 2010, plaintiff's job performance was rated as above average, and she was recommended for rehire for the 2010 to 2011 school year. During this time, plaintiff observed her site supervisor, who was African-American and of the Pentecostal faith, slowly replacing vacant positions at the Jacksonville facility with new staff that were African-American and/or affiliated with the supervisor's Pentecostal church. By January 2010, approximately half of the Jacksonville employees were associated with the Pentecostal church. The site supervisor denied she had any authority to make hiring or termination decisions. Plaintiff and two of her Caucasian, non-Pentecostal coworkers complained of preferential treatment toward the new employees, which included those employees receiving extra time off, receiving permission to complete work for the church during school hours, and opportunities for summer employment.

¶ 6    Due to concerns over grant funding, in June 2010, all Head Start employees, including plaintiff, received termination letters. However, as of August 19, 2010, all but three employees at the Jacksonville facilities had received their return-to-work letters. Plaintiff and the two other Caucasian, non-Pentecostal employees were the only employees who had not received their return-to-work letters. Defendant asserted the delay in sending plaintiff and her two coworkers return-to-work letters was attributed to a pending internal audit of random workers throughout its numerous Head Start programs, including those three employees at the Jacksonville facility.

¶ 7    On August 23, 2010, despite not receiving a return-to-work letter, plaintiff reported for orientation but was told to leave because she was not on the list as a teacher. According to defendant, this led to plaintiff thereafter engaging in disrespectful behavior, such as cursing, throwing a telephone, and being disruptive to the point where she was escorted from one of the Head Start facilities. Prior to these occurrences, defendant claimed plaintiff was scheduled to be recalled as a teacher for the 2010 to 2011 school year once the audit had been completed. However, defendant cited plaintiff's behavior as its reason for not rehiring plaintiff. Plaintiff denied all misbehavior other than cursing in a facility parking lot when she was alone with a friend. A newly certified teacher, who was both African-American and Pentecostal, was hired as a full-time teacher.

¶ 8                                B. Administrative Proceedings

¶ 9        Plaintiff sought review of defendant's decision not to hire her with the Department of
Human Rights (Department) on the grounds that defendant had discriminated against her on
the basis of her religion and race. In April 2011, the Department dismissed her claim due to
lack of substantial evidence.

¶ 10                                 C. Trial Court Proceedings

¶ 11                                 1. *Pretrial Proceedings*

¶ 12       In October 2011, plaintiff filed her first amended complaint, alleging defendant's decision
not to rehire her was a pretext for racial discrimination (count I) and religious discrimination
(count II) and, therefore, it violated the Act. *Id.* Plaintiff asserted other teachers who were
non-Caucasian and Pentecostal, both those similarly situated and those of lesser experience
and seniority, were rehired.

¶ 13       In November 2013, defendant filed a motion for summary judgment, asserting plaintiff
failed to establish a *prima facie* case for discrimination. The trial court denied the motion in
February 2014, finding issues of material fact remained that precluded summary judgment. In
June 2015, plaintiff filed a second amended complaint containing the same allegations of racial
and religious discrimination.

¶ 14                                 2. *Jury Instructions*

¶ 15       Later that month, the parties filed their proposed jury instructions. Three of those
instructions are at issue on this appeal.

¶ 16                        a. Plaintiff's Instruction Nos. 15 and 16

¶ 17       Plaintiff's instruction Nos. 15 and 16 outline the elements of workplace discrimination
based on race and religion. The instructions are nearly identical; the only difference is that
plaintiff's instruction No. 15 included language regarding racial discrimination, whereas
plaintiff's instruction No. 16 included language regarding religious discrimination. Due to the
similarity of the instructions and the parties' arguments, we address these instructions together.

¶ 18       Plaintiff's instruction Nos. 15 and 16 were tendered as follows. The bracketed language
highlights the differing language in plaintiff's instruction No. 16. The first portion of plaintiff's
instruction Nos. 15 and 16 outlined plaintiff's theory that defendant's refusal to rehire her was
based on pretext.

           "In this case, Plaintiff claims that she was not rehired to her teaching position
           because of her race [religion]. Defendant denies this claim and asserts that it did not
           rehire Plaintiff due to her unprofessional conduct on or after August 23, 2010.

           To succeed on this claim, Plaintiff must prove five things by a preponderance of the
           evidence:

           First, that Plaintiff is Caucasian [non-Pentecostal];

           Second, that Plaintiff applied for and was qualified to be rehired to her teaching
           position;

           Third, that Defendant did not rehire Plaintiff to her teaching position;

Fourth, that Defendant rehired similarly situated non-Caucasian [Pentecostal] teachers and other personnel who had less seniority and less education than Plaintiff[;]

Fifth, that Plaintiff sustained damages as a result of Defendant's decision not to rehire her[.]

If you find from your consideration of all the evidence that each of these propositions has been proven, then your verdict should be for Plaintiff. On the other hand, if you find from your consideration of all the evidence that any of these propositions has not been proven, then your verdict should be for Defendant."

Plaintiff cited this portion of the instruction as a modified version of Illinois Pattern Jury Instruction, Civil, No. 250.02 (2006). Plaintiff later tendered the following additional language to plaintiff's instruction Nos. 15 and 16, which outlines her motivating-factor theory of liability:

"In the alternative, Plaintiff must prove by a preponderance of the evidence that her race [religion] was a motivating factor in Defendant's decision not to rehire her. A motivating factor is something that contributed to Defendant's decision.

If you find that Plaintiff has proven that her race [religion] contributed to Defendant's decision not to rehire her, you must then decide whether Defendant proved by a preponderance of the evidence that it would not have rehired her even if Plaintiff was not Caucasian [was Pentecostal]. If so, you must enter a verdict for the Plaintiff but you may not award her damages."

¶ 19 This motivating-factor portion of plaintiff's instruction Nos. 15 and 16 cited 7th Cir. Pattern Jury Instructions, Civil, No. 3.01 (2005 rev. ed.). Defendant objected to the fourth element of the pretext portion—"that Defendant rehired similarly situated non-Caucasian [Pentecostal] teachers and other personnel who had less seniority and less education than Plaintiff"—as incorrectly omitting plaintiff's burden to prove causation. Further, defendant objected to the mixed-motive paragraphs as inaccurately stating the law. Accordingly, defendant tendered alternative instructions, defendant's instruction Nos. 11 and 12, which omitted the mixed-motive paragraphs and amended the fourth element of the pretext paragraphs to read: "that Defendant did not rehire Plaintiff because of her race [religion]." The trial court denied defendant's instruction Nos. 11 and 12 and ordered plaintiff's instruction Nos. 15 and 16 given over defendant's objections. Additionally, the jury instructions contained a scrivener's error the parties corrected after the trial court read the instructions to the jury. Because the scrivener's error does not impact our analysis of this case, we will not address it.

¶ 20                                   b. Plaintiff's Instruction No. 17

¶ 21 Plaintiff's instruction No. 17 read:

"You must decide whether Defendant discriminated against Plaintiff because of her race or religion. The fact that Defendant may have treated some Caucasians or non-Pentecostal employees favorably does not immunize it from liability in this case. In other words, you may find Defendant discriminated against Plaintiff even though Defendant did not discriminate against other Caucasian or non-Pentecostal employees."

This nonpattern instruction cited an unpublished federal district court case, *Woods v. Von Maur, Inc.*, No. 09 C 7800, 2012 WL 2062400 (N.D. Ill. June 7, 2012). Defendant objected to

this instruction, asserting it inaccurately conveyed the law. The trial court gave the instruction over defendant's objection.

¶ 22                              3. *The Verdict and Posttrial Proceedings*

¶ 23    At the conclusion of the July 2015 jury trial, the parties presented their closing arguments, wherein plaintiff argued, "This case is about, [plaintiff] was discriminated [against] based on race and religion in her termination. Was she terminated in August 2010 because of her race *** and/or because of her religion? Was her race and religion a motivating factor for the defendant when they did determine that she was terminated?" Plaintiff also argued the reasons defendant gave for failing to rehire plaintiff were a pretext for its actual, discriminatory reasons.

¶ 24    The jury subsequently returned a verdict in favor of plaintiff and against defendant on both counts and assessed damages in the amount of $100,000. In October 2015, defendant filed a motion for a new trial, asserting, in part, plaintiff's jury instructions discussing plaintiff's claims under the Act failed to accurately state the law, confused and misled the jury, and resulted in prejudice to defendant. The following month, the trial court denied defendant's motion.

¶ 25    This appeal followed.

¶ 26                                    II. ANALYSIS

¶ 27    On appeal, defendant asserts the trial court erred by tendering three of plaintiff's proposed jury instructions related to the Act, arguing those instructions inaccurately stated the law. We begin by outlining the relevant provisions of the Act.

¶ 28                                     A. The Act

¶ 29    One of the public policies behind the Act is:

> "To secure for all individuals within Illinois the freedom from discrimination against any individual because of his or her race, color, religion, sex, national origin, ancestry, age, order of protection status, marital status, physical or mental disability, military status, sexual orientation, or unfavorable discharge from military service in connection with employment, real estate transactions, access to financial credit, and the availability of public accommodations." 775 ILCS 5/1-102(A) (West 2010).

With respect to discrimination in a place of employment, the Act makes it a civil-rights violation:

> "For any employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination or citizenship status." 775 ILCS 5/2-102(A) (West 2010).

¶ 30    When Illinois courts analyze employment-discrimination cases brought under the Act, we adopt the same analytical framework set forth in United States Supreme Court decisions addressing claims arising under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e to 2000e-17 (2006)). *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 178, 545 N.E.2d 684, 687 (1989).

¶ 31        Having set forth some of the pertinent aspects of the Act, we now turn to the standard of review.

## B. Standard of Review

¶ 32

¶ 33        Depending on the issue presented, appellate courts must determine which of two standards of review apply to the trial court's decisions regarding jury instructions. Typically, we review the court's decision to grant or deny certain jury instructions for an abuse of discretion. *Studt v. Sherman Health Systems*, 2011 IL 108182, ¶ 13, 951 N.E.2d 1131. In those instances, we must determine "whether, taken as a whole, the instructions are sufficiently clear so as not to mislead and whether they fairly and correctly state the law." (Internal quotation marks omitted.) *Id.* However, when the issue is whether the jury instructions accurately conveyed the applicable law, our review is *de novo*. *Id.*

¶ 34        Whenever possible in a civil case, the trial court should use any applicable pattern jury instructions. See Ill. S. Ct. R. 239(a) (eff. Apr. 13, 2013). In this particular case, however, the parties agree no standard pattern instructions are available, which required the parties to craft their own nonpattern instructions. Where a nonpattern instruction is given, that instruction should be "simple, brief, impartial, and free from argument." *Id.*

¶ 35        Even if the trial court errs by giving an improper instruction, a reviewing court will ordinarily not reverse the trial court unless the instruction "clearly misled the jury and resulted in prejudice to the appellant." *Schultz v. Northeast Illinois Regional Commuter R.R. Corp.*, 201 Ill. 2d 260, 274, 775 N.E.2d 964, 973 (2002).

¶ 36        We now turn to the merits of defendant's argument.

## C. Plaintiff's Instruction Nos. 15 and 16

¶ 37

¶ 38        Plaintiff's instruction Nos. 15 and 16 each contain two sets of law based on two differing theories of the case. In the initial paragraphs, plaintiff's instructions intended to outline the law as it relates to pretext. In other words, plaintiff sought to prove defendant's reason for failing to rehire her—her alleged misbehavior—was pretext for discrimination. In the final paragraphs, plaintiff intended to outline the law as it relates to a mixed motive for discrimination. Said another way, plaintiff sought to prove defendant had mixed motives—both legitimate and illegitimate reasons—for failing to rehire her. We address these two theories separately, but first, we must address plaintiff's argument that defendant has forfeited any issues with respect to plaintiff's instruction Nos. 15 and 16.

## 1. *Forfeiture*

¶ 39

¶ 40        Plaintiff asserts defendant has forfeited any challenge to these instructions by failing to raise these issues before the trial court and tendering alternative instructions. See *Deal v. Byford*, 127 Ill. 2d 192, 202-03, 537 N.E.2d 267, 271 (1989) ("To preserve an objection to a jury instruction a party must both specify the defect claimed and tender a correct instruction."). The record contradicts this assertion. Defendant specifically objected to plaintiff's instruction Nos. 15 and 16 for failing to accurately convey the law and offered alternative instructions. Nonetheless, plaintiff asserts defendant failed to provide a definition of the phrase "because of" in its alternative instruction regarding the fourth element, which renders the argument forfeited. However, plaintiff fails to explain why such a definitional instruction was necessary.

"When words used in a jury instruction have a commonly understood meaning, the court need not define them with the use of additional instructions; this is particularly true where the pattern jury instructions do not provide that an additional definition is necessary." *People v. Manning*, 334 Ill. App. 3d 882, 890, 778 N.E.2d 1222, 1228 (2002). Thus, we conclude defendant has not forfeited its argument that plaintiff's instruction Nos. 15 and 16 failed to accurately state the law.

¶ 41                                  2. *Pretext Instruction*

¶ 42    The first portion of plaintiff's instruction Nos. 15 and 16 sets forth five elements plaintiff was required to prove to support her theory that defendant's reasoning for terminating her was based on pretext (*i.e.*, a lie). The only element contested on appeal is the fourth element, which reads, "that Defendant rehired similarly situated non-Caucasian [Pentecostal] teachers and other personnel who had less seniority and less education than Plaintiff."

¶ 43    Defendant asserts plaintiff's fourth element failed to include the element of causation that defendant included in its alternative instruction. Plaintiff asserts she does not need to prove causation because discrimination based on pretext is not a tortious offense that requires the element of causation.

¶ 44    In support of its argument, defendant points to the language of the Act as requiring causation. Defendant notes the purpose of the Act is "[t]o secure for all individuals within Illinois the freedom from discrimination against any individual *because* of his or her race, color, [or] religion." (Emphasis added.) 775 ILCS 5/1-102(A) (West 2010). Accordingly, "[i]t is a civil rights violation *** [f]or any employer to refuse *** renewal of employment *** *on the basis of* unlawful discrimination." (Emphasis added.) 775 ILCS 5/2-102(A) (West 2010). Defendant highlights the aforementioned use of ("because") and ("on the basis of") in the statute as requiring plaintiff to demonstrate causation.

¶ 45    According to defendant, as plaintiff's instructions read, plaintiff only needed to show defendant hired similarly situated teachers who were either non-Caucasian or Pentecostal, regardless of reasoning. We agree and conclude the language of the Act requires plaintiff to demonstrate a link between her race or religion and defendant's decision not to rehire her when asserting the basis for the termination was pretextual.

¶ 46    A plaintiff may present either direct or indirect evidence of discrimination. *Lalvani v. Human Rights Comm'n*, 324 Ill. App. 3d 774, 790, 755 N.E.2d 51, 64 (2001). Direct evidence is that which "prove[s] the particular fact in question, without reliance on inference or presumption." *Id.* at 791, 755 N.E.2d at 65. Under the direct method, "once a plaintiff in a Title VII case establishes by direct evidence that the employer placed substantial reliance on a prohibited factor, the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision even if the prohibited factor had not been considered." *Id.* at 790, 755 N.E.2d at 65. Nothing in the record demonstrates plaintiff presented direct evidence of discrimination.

¶ 47    By contrast, under the indirect method, the plaintiff must first establish a *prima facie* case, then the defendant employer must rebut the presumption of discrimination by articulating, not proving, "a legitimate nondiscriminatory reason for its decision." *Kalush v. Department of Human Rights Chief Legal Counsel*, 298 Ill. App. 3d 980, 993, 700 N.E.2d 132, 141 (1998). The plaintiff "must then prove by a preponderance of the evidence that the employer's articulated reason was not its true reason, but was instead a pretext for unlawful

discrimination." (Internal quotation marks omitted.) *Lalvani*, 324 Ill. App. 3d at 790, 755 N.E.2d at 64 (quoting *Zaderaka*, 131 Ill. 2d at 179, 545 N.E.2d at 687). "In this approach, the ultimate burden of persuading the trier of fact that there was unlawful discrimination remains at all times with the plaintiff." *Id.*

¶ 48 Plaintiff relies on *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344 (7th Cir. 1995), to support her contention that an employee need not demonstrate but-for causation to support an employment-discrimination claim. In *Hennessy*, the plaintiff filed a discrimination lawsuit against her employer under Title VII, alleging her gender was the employer's motivating factor in terminating her position after she became pregnant and gave birth. *Id.* at 1350. *Hennessy* is distinguishable from the present case because, unlike the matter before us, the plaintiff in *Hennessy* proceeded under the direct-evidence approach, which required the employer to prove by a preponderance of the evidence that it would have made the same decision even if the prohibited factor had not been considered. Accordingly, we conclude plaintiff's reliance on *Hennessy* is misplaced with respect to plaintiff's pretext claim.

¶ 49 During oral argument, plaintiff maintained *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711 (1983), supports her claim that but-for causation is not required in employment-discrimination cases. In *Aikens*, a black postal service employee sued the United States Postal Service, alleging discrimination against him in promotion decisions. There, the United States Supreme Court held as follows: (1) where the suit was fully tried on the merits, it was unnecessary for the parties thereafter to address the question of a *prima facie* case, and by so doing, the parties unnecessarily evaded the ultimate question of discrimination; and (2) a plaintiff in an equal-employment-opportunity case may prove his case by direct or circumstantial evidence, and the district court should not have required the plaintiff to submit direct evidence of discriminatory intent. *Id.* at 713-14.

¶ 50 According to the Supreme Court, when the defendant fails to persuade the "court to dismiss the action for lack of a *prima facie* case, and responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection, the factfinder must then decide whether the rejection was discriminatory." *Id.* at 714-15. The Supreme Court determined the *prima facie* case was not an appropriate issue for the jury; rather, the ultimate issue was "whether the defendant intentionally discriminated against the plaintiff. [Citation.] In other words, is the employer ... treating some people less favorably than others because of their race, color, religion, sex, or national origin." (Internal quotation marks omitted.) *Id.* at 715. The Court went on to point out intentional discrimination can be proved not only by direct evidence but also by circumstantial evidence. Thus, although the *Aikens* case does prohibit requiring direct evidence, contrary to plaintiff's argument, it also demonstrates that a plaintiff must prove he or she was discriminated against *because* of race, color, religion, sex, or national origin.

¶ 51 Plaintiff asserts several of her instructions discussed the requirement of causation, thus curing any defect in the elements instructions. During questioning from this court at oral argument, counsel for plaintiff asserted the language at the beginning of (1) plaintiff's instruction Nos. 15 and 16, which begins with, "Plaintiff claims that she was not rehired to her teaching position *because* of her race," and (2) plaintiff's instruction No. 17, which begins, "You must decide whether defendant discriminated against Plaintiff *because* of her race or religion," (emphases added) satisfies the causation requirement. We disagree.

¶ 52 An elements instruction is a roadmap for the jury, guiding its review of the evidence and defining what evidence it should look for in making its decision. The portion of plaintiff's

instruction Nos. 15, 16, and 17, to which plaintiff refers, does inform the jury of the nature of plaintiff's claim. However, the language following, "To succeed on this claim, Plaintiff must prove five things by a preponderance of the evidence," instructs the jury as to what must be proved in order to entitle plaintiff to a verdict in her favor. As given, the instructions failed to instruct the jury that in order to succeed on her claim, plaintiff was required to show she was not rehired because of her race or religion. Despite some instructions discussing the necessity of proving causation, the elements instruction, which sets forth the essential elements plaintiff needed to prove, omitted the necessity of proving causation. Rather, defendant's proffered instructions (Nos. 11 and 12), which the trial court rejected, more accurately stated the law by including the element of causation as required by the Act. Accordingly, we conclude the court erred by giving plaintiff's jury instructions, which inaccurately conveyed the law.

¶ 53    Further, we conclude the error prejudiced defendant. See *Schultz*, 201 Ill. 2d at 274, 775 N.E.2d at 973. "The function of jury instructions is to convey to the jury the correct principles of law applicable to the submitted evidence and, as a result, jury instructions must state the law fairly and distinctly and must not mislead the jury or prejudice a party." (Internal quotation marks omitted.) *Doe v. University of Chicago Medical Center*, 2014 IL App (1st) 121593, ¶ 77, 20 N.E.3d 1. The only contested legal issue for the jury to determine regarding plaintiff's pretext theory—whether defendant failed to rehire plaintiff because of her race or religion—was not provided to the jury. The failure to include this component in the elements instruction was both inaccurate and misleading. Given that we do not know which theory of liability the jury relied upon when it found in plaintiff's favor, we conclude the failure to provide such an instruction was prejudicial to defendant. That plaintiff argues her instructions already contained more issues of proof than necessary is unpersuasive, as the jury was deprived of an instruction regarding the critical issue of causation. Regardless of the evidence, the fact that the jury was not provided with the correct instructions regarding the law requires reversal.

¶ 54                                   3. *Motivating-Factor Instruction*
¶ 55    Although we have already determined plaintiff's instruction Nos. 15 and 16 inaccurately stated the law, thus requiring remand for a new trial, we address the remaining issues with the jury instructions as they are likely to arise again on remand. *Pielet v. Pielet*, 2012 IL 112064, ¶ 56, 978 N.E.2d 1000.

¶ 56    The portion of the instructions regarding the motivating-factor language stated:

> "In the alternative, Plaintiff must prove by a preponderance of the evidence that her race [religion] was a motivating factor in Defendant's decision not to rehire her. A motivating factor is something that contributed to Defendant's decision.
>
> If you find that Plaintiff has proven that her race [religion] contributed to Defendants' decision not to rehire her, you must then decide whether Defendant proved by a preponderance of the evidence that it would not have rehired her even if Plaintiff was not Causasian [was Pentecostal]. If so, you must enter a verdict for the Plaintiff but you may not award her damages."

This addition to plaintiff's instruction Nos. 15 and 16 cited 7th Cir. Pattern Jury Instructions, Civil, No. 3.01. According to the Committee Comments, Instruction No. 3.01 is based on the case of *Gehring v. Case Corp.*, 43 F.3d 340, 344 (7th Cir. 1994). 7th Cir. Pattern Jury Instructions, Civil, No. 3.01, Committee Comments (2005 rev. ed.) However, the language in

plaintiff's instruction Nos. 15 and 16 does not mirror the language included in 7th Cir. Pattern Jury Instructions, Civil, No. 3.01. Rather, the language used by plaintiff comes from a recommendation in the Committee Comments based on the reasoning used by other circuits when the plaintiff asserts the defendant had a "mixed motive" for terminating the plaintiff's employment or failing to rehire the plaintiff. The committee comment concludes by saying, "Without clear guidance in the circuit case law, the Committee cannot offer assistance in determining when a 'mixed motive' instruction is appropriate." 7th Cir. Pattern Jury Instructions, Civil, No. 3.01, Committee Comments (2005 rev. ed.).

¶ 57    That being said, Illinois courts do recognize the mixed-motive method of determining discrimination. See, *e.g.*, *Chicago Housing Authority v. Human Rights Comm'n*, 325 Ill. App. 3d 1115, 759 N.E.2d 37 (2001). The question is whether plaintiff met the standard for establishing defendant's decision was based on a mixed motive in order to tender such a jury instruction.

¶ 58    The legal concepts of pretext and mixed motive are not interchangeable. Unlike pretext, wherein the plaintiff may rely on indirect evidence of discrimination, "to use the mixed-motive method, the plaintiff must show direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision." (Internal quotation marks omitted.) *Id.* at 1124, 759 N.E.2d at 46. The employee's evidence must do more than create an inference of discrimination; rather, it must establish a clear nexus between the employer's reliance on an impermissible factor and its subsequent decision to discharge the employee. See *Board of Education of Schaumburg Community Consolidated School District No. 54 v. Illinois Educational Labor Relations Board*, 247 Ill. App. 3d 439, 461, 616 N.E.2d 1281, 1295 (1993); *Chicago Housing Authority*, 325 Ill. App. 3d at 1125, 759 N.E.2d at 47. Once the plaintiff has provided the direct evidence that the employer relied on illegitimate criteria, the employer must demonstrate it would have reached the same decision even if it did not rely on illegitimate criteria. *Id.* at 1124, 759 N.E.2d at 46.

¶ 59    Here, plaintiff presented no direct evidence of discrimination showing that the decision makers placed substantial negative reliance on an illegal criterion in deciding not to rehire her. Moreover, plaintiff's case did not rest on the allegation that defendant's motives were both legitimate and illegitimate; plaintiff vehemently denied engaging in the misbehavior cited by defendant as the reason for her termination. Rather, plaintiff's theory of the case was that defendant's reason for not rehiring her was based solely on pretext, which allows the plaintiff to rely on indirect evidence. *Id.* at 1123, 759 N.E.2d at 45.

¶ 60    Because plaintiff failed to present evidence that defendant's reason for terminating her was based on a mixed motive, it was erroneous for the trial court to give such an instruction.

¶ 61                          D. Plaintiff's Instruction No. 17

¶ 62    Defendant next asserts the trial court erred by allowing plaintiff's instruction No. 17, based on an unpublished district court case, *Woods*, 2012 WL 2062400. During the instruction conference, plaintiff represented the proposed instruction was given in the *Woods* case. The instruction read:

        "You must decide whether Defendant discriminated against Plaintiff because of her race or religion. The fact that Defendant may have treated some Caucasians or non-Pentecostal employees favorably does not immunize it from liability in this case. In other words, you may find Defendant discriminated against Plaintiff even though

- 10 -

Defendant did not discriminate against other Caucasian or non-Pentecostal employees."

¶ 63    Given *Woods* is devoid of any discussion of the use of the above instruction, citing *Woods* to the trial court seems questionable. However, plaintiff's instruction does contain an accurate statement of law. In *Connecticut v. Teal*, 457 U.S. 440, 455 (1982), the Supreme Court concluded Title VII "never intended to give an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees' group." Rather, the statute was written for the "protection of the individual employee, rather than the protection of a minority group as a whole." *Id.* at 453-54. Although the parties point to no published Illinois cases that include this statement in their jury instructions, that does not make the statement inaccurate. The Act contains the same framework as that contained in Title VII, and we analyze cases under the Act according to Supreme Court decisions based on Title VII. *Chicago Housing Authority*, 325 Ill. App. 3d at 1123, 759 N.E.2d at 45. The *Teal* case stands for the proposition stated in plaintiff's instruction No. 17: "The fact that Defendant may have treated some Caucasians or non-Pentecostal employees favorably does not immunize it from liability in this case." Accordingly, we conclude this instruction contains an accurate statement of the law and the trial court properly tendered it to the jury.

¶ 64    We note the first line of the instruction, however, would be redundant once the elements instructions (plaintiff's instruction Nos. 15 and 16) are corrected. See *Montefusco v. Cecon Construction Co.*, 74 Ill. App. 3d 319, 325, 392 N.E.2d 1103, 1107 (1979) (repetitious jury instructions should be avoided).

¶ 65                                    III. CONCLUSION

¶ 66    For the foregoing reasons, we reverse and remand for further proceedings.

¶ 67    Reversed; cause remanded for further proceedings.

- 11 -