In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2958

Harry C. Dunn, III,

Plaintiff-Appellant,

v.

Nordstrom, Inc.,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Indiana.
No. IP98-1599-C-M/S--Larry J. McKinney, Chief Judge.

Argued April 17, 2001--Decided August 10, 2001


  Before Fairchild, Cudahy, and Coffey,
Circuit Judges.

  Cudahy, Circuit Judge.  Nordstrom fired
Harry Dunn, III,  an African-American
security guard at its Indianapolis retail
store, after discovering that Dunn had
brought a firearm into the store's
employee service area. Dunn subsequently
filed suit against Nordstrom, alleging
that prior to his termination, Nordstrom
demoted him in retaliation for a
complaint of discrimination he filed with
the Equal Employment Opportunity
Commission (EEOC); that Nordstrom
promoted a less-qualified individual over
him following his second EEOC complaint;
and that Nordstrom terminated his
employment on the grounds of race, rather
than for his violation of the company's
weapons policy. The district court
granted summary judgment in favor of
Nordstrom. We affirm in part, reverse in
part and remand for further proceedings.

I.

  In June 1995, Nordstrom hired Harry Dunn
(an African-American) to serve as a loss
prevention agent at its Indianapolis,
Indiana retail location. J. Bradley
Hanen, the store's loss prevention
manager (and thus Dunn's supervisor),
informed Dunn on April 5, 1996 that he
was being promoted to the position of
"internal loss prevention lead."/1 Dunn

alleges that this position was equivalent to assistant manager of the loss prevention department, and required him to interview new hires, oversee the department budget, investigate store employees and generally oversee the internal loss prevention department. Dunn also received an increase in salary to accompany his new responsibilities. However, in spite of his raise, Dunn believed that his rate of compensation was not comparable to the salary received by the two (white) individuals who had previously occupied his new position. Thus, in December 1996, Dunn filed a racial discrimination charge against Nordstrom with the EEOC. It appears that the EEOC did not act on this complaint.

Following this initial complaint to the EEOC, Dunn alleges that he was demoted from internal loss prevention lead/assistant manager while participating in a conference phone call with Joseph Maniaci, Nordstrom's regional loss prevention manager, as well as with other "internal leads" from other stores. During this conversation, Maniaci allegedly told Dunn that he should no longer call himself "internal loss prevention lead," but rather "internal investigator." In addition, Dunn alleges he was informed that his duties had been reduced so that he no longer supervised employees, oversaw the department's budget or staffed and trained department employees. Further, Dunn alleges that he was denied a $1 per hour raise as a result of his demotion.

On April 9, 1997, Dunn filed a second complaint with the EEOC, alleging that Nordstrom demoted him in retaliation for filing his initial EEOC complaint. As a result of this second complaint, Dunn alleges that Nordstrom promoted him back to internal lead investigator and provided him with the $11.75 per hour salary allegedly received by the previous white internal loss prevention lead investigators. Dunn was also awarded back pay for the previously incurred salary deficiency.

Following Hanen's departure from the store in November 1996, Dunn became the acting loss prevention manager. However, by January 1997, Patty Sammuli applied for and permanently occupied the manager position; after approximately six months,

Sammuli transferred to Connecticut. Although Dunn believed he deserved the promotion to the newly-vacant manager position, Nordstrom instead transferred and promoted Carl Sims, who is also an African-American male. Prior to this promotion, Sims was the manager at a Nordstrom Rack located in Oakbrook, Illinois, where he apparently supervised only one employee.

On June 26, 1997, Dunn (who possessed a weapons permit) brought a handgun and loaded clip into the store's employee service area, storing them in an unlocked box on a shelf. Another loss prevention employee reported this to Sims, who located and disarmed the gun. When confronted by Sims, Dunn admitted to bringing the gun to work. Shortly thereafter, Nordstrom terminated Dunn for violating its express weapons policy, which states, "For your protection and safety of others, do not bring any potentially dangerous items to work, including weapons." When Dunn alerted management to similar conduct by Mark Fritz, a white loss prevention department employee, Nordstrom promptly terminated Fritz's employment. Dunn alleges, however, that the store manager was reluctant to fire Fritz and only did so out of considerations of fairness.

Dunn filed suit against Nordstrom under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec.sec. 2000e et seq., and 42 U.S.C. sec. 1981. In his complaint, Dunn alleged three separate acts of retaliation or discrimination by Nordstrom: (1) his demotion from assistant manager; (2) Sims' promotion to manager; and (3) his termination for violating the weapons policy. The district court disposed of all three claims on summary judgment. Specifically, the district court held that no material issues of fact existed with regard to Dunn's claim of retaliatory demotion from assistant manager because Dunn had failed to prove he had previously been promoted to that position. The district court further held that, even if Dunn had established this advancement, he had not shown any adverse consequences resulting from the less distinguished title he allegedly received following his initial complaint to the EEOC. Next, the district court dismissed Dunn's claim that Nordstrom retaliated against him by

promoting Sims to loss prevention manager, noting that Dunn provided no supporting evidence other than self-serving assertions of his superior qualifications for the position. Lastly, the district court found that no material issues of fact existed with regard to Dunn's termination based on his violation of Nordstrom's weapons policy, and that Dunn did not supply evidence that the policy's enforcement was a pretext for discrimination. Dunn appeals.

II.

On appeal, Dunn argues that the district court should not have granted summary judgment on any of his retaliation and discrimination claims because material issues of fact exist with regard to each claim. We review de novo the district court's disposition of this case on summary judgment. See Bultemeyer v. Fort Wayne Community Schools, 100 F.3d 1281, 1282-83 (7th Cir. 1996). In so doing, we view the record in the light most favorable to Dunn, the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment is only proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). On appeal, Dunn argues that the district court erred by granting summary judgment because issues of fact existed with regard to whether: (1) Nordstrom retaliated against him by demoting him following his initial complaint to the EEOC; (2) Nordstrom retaliated against him by promoting Sims following his second EEOC complaint; and (3) Nordstrom behaved in a discriminatory manner by terminating him despite an unofficial policy that, regardless of Nordstrom's official policy to the contrary, permitted employees to store firearms in the employee service area.

Because Dunn presents no direct evidence in support of his claims, he must present sufficient evidence to establish a prima facie case of discrimination under the burden-shifting methodology of McDonnell Douglas Corp. v. Green, 411 U.S. 792

(1973). In order to prove a prima facie case of discrimination, Dunn must show that (1) he was a member of a protected class; (2) he was meeting Nordstrom's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees outside of his protected class. See Foster v. Arthur Andersen, L.L.P., 168 F.3d 1029, 1035 (7th Cir. 1999).

The standard for establishing a prima facie case of retaliation is slightly different. Due to a "causal connection" requirement, "[t]he McDonnell Douglas standard that we apply in most of our retaliation cases is not really the McDonnell Douglas standard." See Bourbon v. Kmart Corp., 223 F.3d 469, 475 (7th Cir. 2000) (Posner, J., concurring). Rather, a plaintiff must establish that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action subsequent to his participation; and (3) there was a causal link between the adverse action and the protected activity. See Sweeney v. West, 149 F.3d 550, 555 (7th Cir. 1998). To prove a causal link, the plaintiff is re quired to show that the employer would not have taken the adverse action "but for" the plaintiff's engagement in the protected activity. See McKenzie v. Ill. Dep't of Transp., 92 F.3d 473, 483 (7th Cir. 1996).

Even if Dunn successfully establishes a prima facie case of either discrimination or retaliation, Nordstrom may nevertheless escape liability by articulating a "legitimate, nondiscriminatory reason" for its action. See Hughes v. Brown, 20 F.3d 745, 746 (7th Cir. 1994). If Nordstrom clears this hurdle, the burden once again shifts to Dunn, who must then provide evidence that Nordstrom's asserted rationale is merely pretextual. See Essex v. United Parcel Serv., Inc., 111 F.3d 1304, 1309 (7th Cir. 1997).

A.

Dunn alleges that Nordstrom's retaliation for his two EEOC complaints is evidenced by his demotion from internal loss prevention lead/assistant manager, as well as Nordstrom's failure

to elevate him to manager of the loss prevention department. We first address Dunn's claim that Nordstrom demoted him for filing his first complaint with the EEOC. The district court held that Dunn failed to provide sufficient evidence of a promotion to internal loss prevention lead/assistant manager and that Dunn had therefore failed to show that he ever occupied the position from which he claimed to have been demoted. Further, the district court held that, assuming Dunn had established this alleged promotion, he had nevertheless failed to prove that he had been demoted. Dunn disagrees, arguing that he has shown a material issue of fact that requires a jury's attention.

As an initial matter, we must determine the precise position from which Dunn claims to have been demoted. Dunn's briefs are not clear on this point, predominantly alleging that he was the store's internal loss prevention lead, but also claiming that this position was the equivalent of being an assistant manager. Despite this lack of clarity, Dunn has shown that there is a sufficient issue of fact with respect to his promotion to internal loss prevention lead and to whether this position was essentially comparable to the position of assistant manager. Dunn not only presents a Nordstrom form entitled "Midwest Region Merit Approval," stating that he was "just promoted to internal lead," but he also provides a document entitled "Internal Loss Prevention Lead Expectations," which indicates that Dunn's role as internal loss prevention lead required him to supervise other internal loss prevention employees, review and generate various reports, ensure that investigations were properly and promptly completed and oversee the department's budget. From this evidence, a jury could reasonably infer that Nordstrom promoted Dunn to internal loss prevention lead. Indeed, Nordstrom does not really contest that Dunn was promoted to this position. Thus, the district court erred by finding that no material issue of fact existed with regard to Dunn's claim that Nordstrom promoted him to internal loss prevention lead (and later demoted him).

Likewise, Dunn produces evidence that the position of internal loss prevention

lead required him to perform the duties of an assistant manager. According to Hanen, his immediate supervisor, "people view [the internal lead investigator position] the same as Assistant Manager of the Loss Prevention Department." Further, loss prevention investigators supervised by Dunn corroborated Hanen's affidavit testimony: Timothy A. Smith "observed Mr. Dunn perform the duties of Assistant Manager of the Loss Prevention Department" prior to his first EEOC complaint, and Stacy LeFlore maintained that "Mr. Dunn held the position of Internal Lead Investigator, which was the Assistant Manager position in the department . . . ." Nordstrom devotes much of its brief to arguing that these are conclusory statements and therefore insufficient to create a genuine issue of material fact. See Cleveland v. Porca Co., 38 F.3d 289, 295 (7th Cir. 1994) ("[s]tatements of 'beliefs' or 'opinions' are insufficient to create a genuine issue of material fact"). However, the affiants are not just expressing beliefs or opinions with respect to Dunn's position, but are instead asserting as a fact that Dunn fulfilled the duties and possessed the authority of the loss prevention department's assistant manager. Nordstrom's supporting affidavits from management personnel, who contend that this position did not exist at the Indianapolis retail location (although the post apparently existed at other locations) and that the job title change applied to all "lead internals," and not just to Dunn, are no more credible than the affidavits presented by Dunn./2 Indeed, Nordstrom's apparent inability to produce any documentary--rather than testimonial--evidence relating to the alleged across-the-board demotion of midwest region internal loss prevention leads is troubling because one would expect a large corporation to document the decision to demote so many employees. Dunn is entitled to have a jury weigh the evidence relating to his performance of an assistant manager's duties, and the district court erred by determining that Dunn had failed to create an issue of fact with regard to whether he performed the duties of an assistant manager, although this was perhaps not his official title.

Most importantly, regardless of the title ascribed to Dunn following his

alleged promotion, Dunn has shown that an issue of fact exists relating to whether he was entrusted with important new duties, including employee supervision, budgeting and reporting. While the parties expend much of their energy arguing over what title accompanied this increase in responsibility, Dunn's title--be it internal loss prevention lead, assistant manager or whatever--is only one factor to be weighed in determining whether Nordstrom retaliated by demoting Dunn. See Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 136 (7th Cir. 1993) ("A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."). Accordingly, regardless whether Dunn was identified as an internal loss prevention lead or assistant manager, he has shown a material issue of fact with regard to his demotion by alleging his increase in responsibility and subsequent loss of this responsibility after he filed his EEOC complaint.

Lastly, Nordstrom makes much of the fact that "[t]iming may be an important clue to causation, but does not eliminate the need to show causation." Bermudez v. TRC Holdings, Inc., 138 F.3d 1176, 1179 (7th Cir. 1998) (citation omitted). Nordstrom argues that Dunn's only evidence of causation comes from the timing of his demotion. However, the demotion's timing is not Dunn's only evidence of causation. The record indicates that at least one Nordstrom employee told Dunn that he was "barking too loud and the company does not like people that bark too loud" after Dunn filed his first EEOC complaint. Further, following Dunn's second EEOC complaint, in which he complained of his demotion, Dunn was promptly promoted back to his previous position and provided with back pay. Accordingly, Dunn has provided sufficient evidence of causation to survive summary judgment.

Nordstrom further argues, based on the affidavit of Maniaci, that Dunn's proof of causation does not even include the timing of his demotion because the decision to change "the lead internal

title to internal investigator" was made prior to the filing of Dunn's first EEOC complaint. However, Nordstrom's only evidence to this effect is Maniaci's testimony that he decided to change the title "in the mid to latter half of 1996." Nordstrom believes that it is unlikely that a decision made in the "mid to latter half of 1996" was made after December 16, 1999, the date of Dunn's first EEOC complaint. It may indeed be unlikely that Maniaci made his decision after Dunn filed his EEOC complaint. However, Maniaci's inability to more precisely remember the date of Dunn's alleged demotion, Nordstrom's lack of documentary evidence--such as a memorandum--relating to the alleged title change and our previously noted concerns regarding whether Dunn held the "lead internal" title that Maniaci changed, all counsel against deciding the issue of causation on summary judgment. Accordingly, the district court erred by granting summary judgment in favor of Nordstrom on the retaliation claim relating to Dunn's demotion.

Dunn next argues that Nordstrom retaliated against him in response to his second EEOC complaint by promoting the less-qualified Sims to manager of the internal loss prevention department. To establish this claim, Dunn must present more than his own, subjective self-appraisal to create a genuine issue of fact. See Fortier v. Ameritech Mobile Communications, Inc., 161 F.3d 1106, 1114 (7th Cir. 1998); Gustovich v. AT&T Communications, Inc., 972 F.2d 845, 848 (7th Cir. 1992); Williams v. Williams Elec., Inc., 856 F.2d 920, 924 (7th Cir. 1988). Dunn's evidence does not survive this challenge. Dunn attempts to distinguish his allegedly superior qualifications by noting that Sims hadsupervised only one investigator in a small Illinois store prior to his promotion. Dunn further asserts that Nordstrom had recognized his capability to fulfill the manager position "soon"; that he received "excellent ratings" from his superiors while Sims failed to garner similar accolades; that he received two performance awards from Nordstrom; and that he had already proven his abilities as assistant manager and acting manager in the Indianapolis store.

Because we are reviewing a decision on

summary judgment, we accept all of these assertions as true. See Yorger v. Pittsburgh Corning Corp., 733 F.2d 1215, 1218-19 (7th Cir. 1984). However, "even if [a plaintiff's] personal appraisal contains true statements about his accomplishments, [an employer is] entitled to determine that the deficiencies in his performance outweighed such accomplishments." Fortier, 161 F.3d at 1114. Nordstrom correctly argues that its decision to promote Sims fell within its business judgment, for the record reflects that despite "excellent ratings," Dunn's performance was also the subject of some concern. In a 1996 performance evaluation, Hanen acknowledged that: "Harry's customer service, leadership, team play, and professionalism are great. Harry is a dedicated, hard working, and consistent employee with in [sic] Loss Prevention." However, Hanen also asserted, "To[o] often Harry is quick to make an excuse, instead of taking accountability and making sure it will not happen again. Productivity wise I think Harry needs to be a lot more organization [sic] in compiling his cases. . . . Because of his lack of organization and other opportunities he sometimes is unable to handle more than one task at a time. . . . Harry has a great potential to move up into management if he addressed [sic] his opportunities."/3 (Emphasis added). Thus, in determining which individual was better qualified to occupy the managerial position, Nordstrom was required to make a calculated business decision by weighing the relative merits and deficiencies of both candidates. And, as we have repeatedly emphasized, it is not our job to sit in judgment of a defendant's personnel department and second-guess its business decisions. Accordingly, Dunn fails to establish a claim of retaliation relating to Nordstrom's failure to promote him to manager./4

B.

   Dunn lastly argues that the district court improperly granted summary judgment in favor of Nordstrom on the issue whether Nordstrom had presented a valid, non-pretextual reason for terminating his employment. "In trying to establish a basis that an employer's explanation was

merely pretextual, an employee must 'focus on the specific reasons advanced by the defendant to support the discharge.'" Lenoir v. Roll Coater, Inc., 13 F.3d 1130, 1133 (7th Cir. 1994) (citing Smith v. Gen. Scanning, Inc., 876 F.2d 1315, 1319 (7th Cir. 1989)). When, as here, a plaintiff does not have direct evidence that rebuts the employer's reason, the "[p]laintiff must prove pretext indirectly by showing one of the following: (1) Defendant's explanation of Plaintiff's discharge had no basis in fact, or (2) the explanation was not the 'real' reason, or (3) at least the reason stated was insufficient to warrant the discharge." Lenoir, 13 F.3d at 1133 (citing Smith, 876 F.2d at 1319). Significantly, in establishing pretext, Dunn need not show that his race was the true motivation behind Nordstrom's decision; it is sufficient for Dunn to establish a prima facie case of discrimination and show that Nordstrom's proffered reason for terminating his employment--his violation of Nordstrom's written weapons policy--was not the true basis for Nordstrom's action. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000) ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.").

Dunn argues that he has shown that an issue of fact exists with regard to whether Nordstrom's weapons policy, rather than racial motivations, was the reason for his termination. Dunn acknowledges that Nordstrom has a written weapons policy, which states: "For your protection and safety of others, do not bring any potentially dangerous items to work, including weapons." However, Dunn maintains that this weapons policy went unenforced until Nordstrom was required to produce a reason to mask its-racially-motivated termination of his employment. In support, Dunn offers not only his own affidavit stating that his supervisors had never objected to his storing a handgun in the store's employee service area, but also the affidavits of Hanen and two internal investigators, all of whom attest that handguns were stored in the employee service area without objection.

Even if Dunn is correct that Nordstrom's weapons policy went unenforced until he was discharged, Dunn has failed to show that the policy, once Nordstrom chose to enforce it, was applied in a discriminatory manner. As noted earlier, a prima facie case requires the employee to show (in addition to the first two elements of the McDonnell Douglas claim) that he was discharged and that other, similarly situated employees who were not members of the plaintiff's protected class were treated more favorably. See Bellaver v. Quanex Corp., 200 F.3d 485, 494 (7th Cir. 2000) (citing McCreary v. Libbey-Owens-Ford Co., 132 F.3d 1159, 1166 (7th Cir. 1997)). Nordstrom notes that it fired Mark Fritz, a white employee, upon learning that Fritz also stored weapons in the store's employee service area. Dunn does not dispute this fact, nor does Dunn name any other white employee who stored weapons in the employee service area but was not fired. Accordingly, Nordstrom has shown that once it did choose to enforce its weapons policy, it did so in a non-discriminatory manner. Dunn's only counter-argument is to assert that J.J. Johannson, the store manager, expressed regret when terminating Fritz, and did not express similar regret when discharging Dunn. However, it is irrelevant whether Nordstrom enjoyed complying with the anti-discrimination laws so long as Nordstrom actually did comply. Here, while Nordstrom may have suddenly decided to implement its previously unenforced weapons policy, Nordstrom did so in a non-discriminatory manner. Accordingly, Dunn has failed to establish a material issue of fact with regard to whether he was terminated for discriminatory reasons.

III.

For the reasons stated above, the decision of the district court is Affirmed in part, Reversed in part and Remanded for further proceedings consistent with this opinion.

FOOTNOTES

/1 Nordstrom employs both internal and external loss prevention employees. While it is not entirely clear from the record, the internal loss prevention department apparently attempts to prevent Nordstrom employees from stealing merchandise,

while the external loss prevention department guards against shoplifting by customers.

/2 The relevance to this case of Nordstrom's testimony that it "changed the lead internal title to internal investigator" is suspect because Dunn was not a "lead internal," but rather an "internal loss prevention lead." This may be an issue of semantics, but where, as here, semantics matter, the parties' failure to adequately describe the loss prevention department's various job titles is disappointing. The record is replete with references to "internal leads," "lead internals," "internal investigators," "internal loss prevention leads," and the like. On remand, the parties are requested to avoid jargon and to speak of job titles with clarity.

/3 "Opportunities" appears to be Nordstrom's euphemism for "shortcomings."

/4 Dunn provides additional support for his retaliation claim by pointing to Sims' affidavit, in which Sims alleges that he was used to fire Dunn because he is African-American and could thus make Dunn's termination appear unrelated to race. But, however relevant Sims' allegations may be to a determination of Nordstrom's motivation when it terminated Dunn, they do not indicate that Nordstrom's promotional selection was in direct response to the EEOC complaint. Sims' affidavit lends no support to Dunn's retaliation claim, for, notably, Sims never attests that Dunn was more competent to fulfill the managerial responsibilities that Nordstrom granted Sims.