David JACKSON, Plaintiff–Appellant,

v.

NORTHEASTERN ILLINOIS
UNIVERSITY, Defendant–
Appellee.

No. 01–1133.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 13, 2001.

Decided Nov. 26, 2001.

Before Hon. FLAUM, Hon. BAUER, Hon. TERENCE T. EVANS, Circuit Judges.

## ORDER

David Jackson, an African American male, sued Northeastern Illinois University ("University") for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C.2000e, after the University suspended him for hitting his supervisor. Jackson appeals, and we affirm.

### I. Background.

The University has employed Jackson as a building service worker since 1994. In May and June 1996, believing he had been the victim of race discrimination, Jackson complained to Dr. Margo Smith, the University's affirmative action officer, about several incidents relating to his employment. Jackson told Smith that his supervisor, a Caucasian named Norman Gagnon, gave him a written "record of counseling" for poor performance without proper cause, used foul language toward him, and was intoxicated when he confronted Jackson about his performance. Smith gave Jackson an affirmative action complaint

form and referred him to Gloria Carter, an African American woman who served as the Director of Personnel. Jackson told Carter that Gagnon had verbally harassed him while he, Gagnon, was intoxicated. Carter told Gagnon's supervisor, Richard Henry, to investigate Jackson's allegations. Henry thereafter told Gagnon about Jackson's complaints.

Several days later, Gagnon asked Jackson to talk with him privately. Jackson and Gagnon relay different versions of what happened next. According to Jackson, Gagnon confronted him about his complaints and swore at him. Jackson said that, when he turned to leave, Gagnon grabbed his arm and "Plaintiff swung to get his arm off," hitting Gagnon "somewhere on his person." Jackson was arrested and charged with assault, but he claimed that the University police refused his request to file charges against Gagnon for grabbing him.

According to Gagnon, Jackson left the room before Gagnon finished talking. Gagnon claimed that he followed Jackson, "plucked his sleeve at the elbow," and that Jackson responded by hitting him in the face with a closed fist. Gagnon stated that Jackson started shouting threats, and that Gagnon then called the University's Public Safety Department and filed assault charges against Jackson.

The day after Jackson hit Gagnon, Carter placed Jackson on paid administrative leave pending an investigation. Carter took charge of the investigation, and Jackson admitted to her that he had hit Gagnon. The University's Employee Disciplinary Management Program provides that employees who engage in fighting are subject to various disciplinary measures, including suspension and discharge. In August 1996 Carter notified Jackson that the University was seeking his discharge, and suspended him without pay pending the discharge proceedings. In responding to the University's summary judgment motion, Jackson contested the accuracy of the information Carter gathered during her investigation, but admitted that Carter suspended him because she believed that he had struck Gagnon in the face with a closed fist and threatened further bodily injury. Gagnon also was disciplined; he received a written reprimand for confronting Jackson and grabbing his arm.

After he was suspended, Jackson filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR") claiming (1) that Gagnon issued Jackson a "written warning" for poor performance based on his race and not his performance, and (2) that Carter retaliated against Jackson for complaining about Gagnon when she placed him on administrative leave and, subsequently, suspended him. The IDHR dismissed Jackson's charge for lack of substantial evidence, and Jackson then filed this suit.

■ The district court granted summary judgment in favor of the University. The court analyzed Jackson's claims under the indirect, burden-shifting approach of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and decided that Jackson could not establish a prima facie case of discrimination because (1) he failed to meet the University's legitimate expectations when he struck Gagnon, and (2) he presented no evidence that similarly-situated employees were treated more favorably. In any event, the district court concluded, Jackson failed to present any evidence that the University's proffered reason for suspending him—that he struck his supervisor— was pretextual. As for Jackson's retaliation claim, the court concluded that Jackson failed to set forth a prima facie case

because he could not show any causal nexus between his protected activities and his suspension. Our review is *de novo*, and we evaluate the evidence in the light most favorable to Jackson, drawing all reasonable inferences in his favor. *Jordan v. Summers*, 205 F.3d 337, 341 (7th Cir.2000).

## II. Analysis.

█ At the outset, we dispense with Jackson's arguments that the district court erred in granting summary judgment because he presented evidence that the University police discriminated and retaliated against him. The district court did not err in disregarding this evidence because it is outside the scope of Jackson's EEOC charge, which does not mention his arrest or the University police. *See Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 689 (7th Cir.2001). We thus limit our analysis to Jackson's remaining arguments on appeal.

### A. Race Discrimination.

█ Jackson challenges the district court's conclusion that he failed to establish a prima facie case of discrimination. To establish a prima facie case, a plaintiff must show that (1) he was a member of a protected class, (2) he was meeting his employer's legitimate performance expectations, (3) he suffered an adverse employment action, and (4) he was treated less favorably than similarly-situated employees outside of his protected class. *See Dunn v. Nordstrom, Inc.*, 260 F.3d 778, 784 (7th Cir.2001). The district court concluded that Jackson established the first and third prongs, but that he failed to present evidence that he met the University's legitimate expectations or that the University had treated similarly-situated employees more favorably.

█ As for the University's legitimate expectations, Jackson argues that he did not fail to meet those expectations when he

struck Gagnon because, Jackson asserts, he acted in self-defense. But Jackson does not dispute that the University legitimately expected that he would not engage in physical fighting. Thus, even if we accepted as true that Gagnon started the fight, Jackson could not prevail because he admits he violated the University's rules against fighting and that Carter suspended him for that reason. *See Johnson v. West*, 218 F.3d 725, 733 (7th Cir.2000) ("[W]e have no quarrel with the idea that an employer need not tolerate employees who go around resolving their problems with physical assaults."); *see also Contreras v. Suncast Corp.*, 237 F.3d 756, 761 n. 1 (7th Cir.2001) (it was "irrelevant" whether plaintiff said "let's get the hell out of here" rather than that supervisor was a "motherfucker" where, either way, the "words evince an attitude of actual and perceived insubordination that factored into [the plaintiff's] dismissal").

█ As for the similarly-situated prong, Jackson maintains that he raised an issue of fact by presenting evidence that (1) he was disciplined for taking time off and Caucasian employees were not, and (2) the University treated Gagnon more leniently than Jackson for fighting. In disciplinary cases like this one, a plaintiff must show that he is similarly situated to persons outside the protected class with respect to performance, qualifications, and conduct. *Radue v. Kimberly–Clark Corp.*, 219 F.3d 612, 617–618 (7th Cir.2000). On appeal, Jackson identifies only one person he claims the University treated more leniently for taking time off: a Caucasian named David Schroeder, whom Jackson says was not written up for being absent when his mother died. But Schroeder is not comparable. The record shows that Jackson was disciplined for being absent without authorization or without a sufficient amount of accrued leave; Jackson

presented no evidence that Schroeder or any other non-African American employee was absent under comparable circumstances. Neither is Gagnon comparable to Jackson because Gagnon's misconduct was qualitatively different than Jackson's; Gagnon grabbed Jackson's arm while Jackson struck Gagnon. Jackson presented no evidence of any non-African American employees who struck their supervisors and were treated by the University more leniently than Jackson.

Jackson cannot meet his burden at the prima facie stage and summary judgment as to his discrimination claim was appropriate for that reason. We note, however, that Jackson's admission that Carter suspended him because he struck Gagnon defeats his claim on the pretext issue as well.

### B. Retaliation.

■ To establish a prima facie case of retaliation a plaintiff must show (1) that he engaged in protected activity, (2) that he subsequently suffered an adverse employment action, and (3) that a causal nexus exists between the adverse action and the protected activity. *Oest v. Illinois Dep't of Corr.*, 240 F.3d 605, 615–16 (7th Cir.2001). The district court concluded that Jackson established the first two prongs of his prima facie case, but that he failed to present any evidence of a causal nexus.

■ On appeal Jackson contends that he presented sufficient evidence of a causal nexus between his protected activity—complaining to the University and to the EEOC—and his suspension because (1) Gagnon confronted him about his complaints and "attacked" him, and (2) the "racial animus" of Gagnon and two University police officers (one who arrested him for striking Gagnon and one who questioned him on another matter) influenced Carter's decision to suspend Jackson. Both arguments lack merit. Gagnon's conduct in confronting Jackson did not cause his suspension; Jackson admits that he was suspended because he struck Gagnon. Similarly, the record is devoid of evidence that Carter was influenced by the "racial animus" of Gagnon or the University police officers; Jackson does not contend that any of them made race-based comments to Carter.

AFFIRMED.