In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2948

ANITA PATT, M.D.,

Plaintiff-Appellant,

v.

FAMILY HEALTH SYSTEMS, INC., et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 98-C-1172--John W. Reynolds, Judge.

Argued May 14, 2001--Decided February 6, 2002

   Before Bauer, Rovner, and Diane P. Wood,
Circuit Judges.

   Rovner, Circuit Judge.  Dr. Anita Patt
sued her former employer under Title VII
of the Civil Rights Act of 1964, 42
U.S.C. sec. 2000e et seq., alleging
gender-based discrimination, a hostile
work environment, and retaliation. The
district court granted summary judgment
in favor of her employer, and Patt
appeals. We affirm.

   Family Health Plan Cooperative ("Family
Health") is a Wisconsin-based health
maintenance organization that ceased
operations in 2000 and is currently in
bankruptcy. Patt joined Family Health in
1993 as a general surgeon. At that time,
the surgery department included Dr.
Kenneth Scher, department chief, and Drs.
Greg Rosner and Fred Steele, both of whom
had joined Family Health in 1991. Shortly
after Patt was hired, another surgeon,
Dr. Allan Converse, joined the
department. During her employment, Patt
was the only female surgeon in the
department.

   Sometime in 1994 Patt learned that she
was earning nearly $50,000 less than Dr.
Rosner, the other junior surgeon in the
department. Patt complained about the
discrepancy, and Family Health responded
by giving her a mid-year $15,000 raise.

Over the course of her employment, Patt continued to receive raises equal to or proportionately larger than Rosner, and the gap between their salaries narrowed. By 1999 the difference was approximately $10,000. Patt, however, believed that Family Health was intentionally paying her less than Rosner because of her gender.

According to Patt, after she complained about the salary discrepancy, matters worsened. She claims the male doctors in her department--Scher in particular-- began a subtle campaign to derail her surgical career. This campaign was typified by Scher's unjustified criticisms of her medical abilities and his efforts to assign her to only simple cases so that she could not progress as a surgeon. As proof of Scher's gender-based animus, she points to derogatory comments Scher made to Patt and other female Family Healthemployees over the course of several years. The parties do not dispute that Patt was never formally disciplined, demoted, suspended, or terminated, and she continued to work for Family Health until it ceased operations in 2000.

In March 1997 Patt filed a complaint with the Equal Employment Opportunity Commission, seeking relief for the salary discrepancy and Scher's alleged harassment. By this time, Converse had replaced Scher as chief of surgery, though Scher still worked in the department. According to Patt, the harassment by Scher--and subsequent harassment by the new surgery chief Converse--intensified after she filed her EEOC complaint; she claims that both doctors excessively scrutinized her work, unfairly limited her surgical practice by requiring that she seek assistance when performing certain surgeries, and unjustifiedly subjected her to "endless peer review" in an effort to tarnish her professional reputation.

In 1998 Patt sued Family Health and its for-profit parent company, Family Health Systems, Inc. On Family Health's motion, the district court ruled that Patt's salary claim was time-barred because she did not file her EEOC complaint within 300 days of learning of the salary discrepancy. See 42 U.S.C. sec. 2000e-5(e)(1). With respect to Patt's remaining claims, the district court granted

summary judgment in favor of Family Health, finding that Patt had failed to establish that she suffered an adverse employment action. In particular, the court found that Patt did not show that Scher or the other male doctors had hampered her surgical career. The court rejected Patt's retaliation claim on similar grounds. The court likewise rejected Patt's hostile work environment claim, finding that Patt failed to establish severe or pervasive harassment. Patt filed a timely notice of appeal.

On appeal, Patt renews her contention that she presented prima facie claims for disparate treatment based on unequal pay and the denial of career opportunities, as well as claims for hostile work environment and retaliation. Our review is under the familiar de novo standard. See Haugerud v. Amery Sch. Dist., 259 F.3d 678, 689 (7th Cir. 2001). Although we view the evidence in the light most favorable to Patt, to survive summary judgment she must come forward with specific facts showing that there is a genuine issue for trial. See Miller v. American Fam. Mut. Ins. Co., 203 F.3d 997, 1003 (7th Cir. 2000).

I.  Unequal Salary Claim

Patt argues that she established a Title VII disparate treatment claim based on unequal pay because "the facts . . . demonstrate that Dr. Patt was paid less than her male colleagues in the surgical department, especially Dr. Rosner." To establish a disparate treatment claim, Patt must show that she was a member of a protected class; that she was meeting Family Health's legitimate performance expectations; that she suffered an adverse employment action; and that Family Health treated similarly situated persons outside of the protected class more favorably. See Dunn v. Nordstrom, Inc., 260 F.3d 778, 784 (7th Cir. 2001).

The parties dispute whether Patt's unequal pay claim was timely. Normally, a plaintiff must file an EEOC complaint within 300 days of the employer's discriminatory act. See 42 U.S.C. sec. 2000e-5(e). Thus, Patt's 1996 EEOC complaint would not be timely with respect to an unequal pay claim dating back to 1994, when Patt first learned that she was being paid less than Rosner.

But Patt seeks to avoid the statute of limitations by relying on the "continuing violation" doctrine. See Bazemore v. Friday, 478 U.S. 385 (1986); Goodwin v. Gen. Motors Corp., 275 F.3d 1005 (10th Cir. 2002); Cardenas v. Massey, 269 F.3d 251, 255-57 (3d Cir. 2001). The doctrine allows a Title VII plaintiff to obtainrelief for a time-barred discriminatory act by linking it with a discriminatory act occurring within the limitations period. Miller, 203 F.3d at 1003.

We need not reach the timeliness issue, however, because Patt cannot succeed on the merits of her unequal pay claim. She has not established that she was paid less than a similarly situated male surgeon. See Dunn, 260 F.3d at 784. Although Rosner was paid a higher salary, the record shows that Rosner worked at Family Health at least a year longer than Patt, and that Rosner had completed four years of post-residency work to Patt's two years at the time she was hired. Patt asserts that Rosner's prior post-residen cy work had "no bearing on nor relationship to surgery," but Rosner's curriculum vitae states that he previously served as "Director of Surgical Critical Care" at a medical facility in New York. Years of service and prior experience are legitimate, non-discriminatory reasons for a wage disparity. See Wollenburg v. Comtech Manuf. Co., 201 F.3d 973, 976 (7th Cir. 2000) ("Even if a man and woman are doing the same work for different pay, there is no violation if the wage discrepancy stems from a factor other than gender."). Patt has thus failed to establish an unequal pay claim.

II. Denial of Career Opportunities

Patt next asserts that her male colleagues, Scher in particular, intentionally hampered her surgical career because of gender-based animus. To succeed on her disparate treatment claim, Patt must show that she suffered a materially adverse employment action. See Dunn, 260 F.3d at 784. Adverse employment actions are not limited solely to demotions, suspensions, or terminations; rather, "a wide variety of actions can qualify, some blatant and some subtle." Haugerud, 259 F.3d at 691. In assessing whether some action by the employer

constitutes an adverse employment action, we will consider both quantitative and qualitative changes in the terms or conditions of employment. Id.

We do not doubt that, in certain circumstances, an employer's deliberate denial of career opportunities could con stitute an adverse employment action. See, e.g., Galabya v. New York City Bd. of Educ., 202 F.3d 636, 641 (2d Cir. 2000) (holding that change in job responsibilities would be actionable where it constituted "setback" to plaintiff's career); De La Cruz v. New York City Hum. Res. Admin. Dep't of Soc. Serv., 82 F.3d 16, 21 (2d Cir. 1996) (finding adverse employment action based on lateral transfer to "less prestigious unit with little opportunity for professional growth"); Pieszak v. Glendale Adv. Med. Ctr., 112 F. Supp. 2d 970, 994 (C.D. Cal. 2000) (holding that medical center's failure to forward to state medical board documents relating to female former medical resident was adverse employment action sufficient to support retaliation claim under Title VII).

In this case, however, Patt fails to support her claims that the male doctors at Family Health "derailed" her surgical career. Patt never specifies which operations in the "full spectrum of general surgery" she was precluded from performing, nor does she offer evidence to explain how Scher (and later Converse) "secretly screened" her cases to prevent her from performing these surgeries. The record shows that as of 1996, cases were assigned to surgeons through a rotation system, under which Patt herself assigned cases for three months out of the year.

Patt also fails to support her assertion that the actions of her male colleagues prevented her from finding a position elsewhere. She testified at her deposition that she applied for two positions during her seven years at Family Health. She had no explanation why she was not offered employment in either case. Further, shortly before she filed her complaint, Patt hired a company to conduct a mock "background check" to reveal what Family Health doctors might say to a prospective employer. Although Scher dropped hints about his negative views of Patt during this background

check, Converse gave her a positive recommendation. Steele also gave Patt a complimentary letter of recommendation before his departure from Family Health in 1997. Because Patt has not presented more specific evidence showing how Family Health limited her career opportunities, we cannot conclude that she suffered an adverse employment action. We therefore agree with the district court that summary judgment was appropriate on this claim.

III.  Hostile Work Environment

   Patt next argues that the harassment by her male colleagues created a "malignant" work environment actionable under Title VII. To establish a hostile work environment claim, Patt must show that she was subjected to harassment so severe or pervasive that it altered the conditions of her employment. See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). When assessing a hostile work environment claim, we look to all the surrounding circumstances, including the frequency of the harassing conduct, its severity, whether it was physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance. Russell v. Board of Trs. of the Univ. of Ill., 243 F.3d 336, 343 (7th Cir. 2001).

   To substantiate her claim, Patt points to eight gender-related comments made by Scher during the course of her employment. Several of these comments-- including Scher's statement to a female nurse that "the only valuable thing to a woman is that she has breasts and a vagina"--are indeed offensive, but these comments were too isolated and sporadic to constitute severe or pervasive harassment. See Adusumilli v. City of Chicago, 164 F.3d 353, 356 (7th Cir. 1998) (holding that isolated incidents and offhand comments did not amount to hostile work environment); Ngeunjuntr v. Metro. Life Ins. Co., 146 F.3d 464, 467 (7th Cir. 1998) (holding that isolated incidents made outside employee's presence did not constitute hostile work environment); Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430-31 (7th Cir. 1995) (holding that a "handful of comments spread over months" did not add up to sexual harassment). Further, Scher

only made two of the comments directly to Patt; the remainder were conveyed to Patt by other Family Health employees. Although these comments are relevant to Patt's claim, the impact of such "second-hand" harassment is obviously not as great as harassment directed toward Patt herself. See Adusumilli, 164 F.3d at 361-62 (citations omitted). We are mindful that Title VII does not mandate admirable behavior from employers, and Scher's conduct, though offensive, thus falls short of "severe" or "pervasive" harassment. Cf. Hostetler v. Quality Dining, Inc., 218 F.3d 798, 807-08 (7th Cir. 2000) (reversing grant of summary judgment for employer because fact issues existed as to whether supervisor's uninvited kiss, attempt to remove bra, and lewd proposition for sex created objectively hostile work environment).

## IV.  Retaliation

Patt finally argues that her male colleagues unlawfully retaliated against her for filing an EEOC complaint by subjecting her to an "endless course" of peer review. To establish a retaliation claim, Patt must show that she engaged in statutorily protected expression by complaining about discrimination covered by Title VII; that she suffered an adverse action by her employer; and that there is a causal link between the protected expression and the adverse job action. See Miller, 203 F.3d at 1007; Haugerud, 259 F.3d at 691. We have already concluded that the facts Patt has cited in support of her "career derailment" theory cannot establish an adverse employment action. We similarly agree with the district court that Patt has not offered evidence to show that the peer review activities constituted an adverse employment action. The record shows that participating in peer review was a requirement of Patt's contract (like all doctors at Family Health), and that her male colleagues also had cases referred to peer review. Patt has offered no basis to conclude that the number of her cases referred to peer review was inordinate when compared to the number of her male colleagues' cases referred for review. Nor has she offered evidence to suggest that any of her cases were inappropriate for peer review. Accordingly, Patt has failed to establish an adverse employment action, and summary judgment was

appropriate on her retaliation claim.

Because the district court properly granted summary judgment for Family Health, we need not reach the other issues raised in Patt's briefs.

AFFIRMED.