**Rose WOODSON, Plaintiff–Appellant,**

v.

**PFIZER, INC.; Warner Lambert–Parke Davis, Inc.; Parke–Davis, Inc.; and Phoenix Pharmaceuticals, Defendants–Appellees.**

No. 01–2848.

United States Court of Appeals, Seventh Circuit.

Argued April 1, 2002.

Decided April 19, 2002.

Before EASTERBROOK, DIANE P. WOOD, and EVANS, Circuit Judges.

## ORDER

Woodson appeals from the district court's grant of summary judgment to the defendants in her civil rights suit, in which she alleged that Pfizer, Inc.,[1] and her employer, Phoenix Pharmaceuticals, Inc., interfered with her ability to do business in primarily white neighborhoods because she is black.

Phoenix promotes pharmaceutical products to physicians in various urban markets. Parran L. Foster III, Phoenix's president, CEO, and founder, is African-American. One of the company's missions is to return a portion of its revenues, in the form of scholarships for disadvantaged students, directly to the communities in which it conducts business. Phoenix also seeks to create jobs in those neighborhoods. As a result of these missions, Phoenix limits its operations to urban communities within which minority groups predominate. Another motive behind this marketing strategy is the small company's inability to compete with major companies that market pharmaceuticals in affluent, predominantly white communities. Therefore, Phoenix has never had a sales territory in a predominantly white community. Pfizer and Phoenix entered into an agreement under which Phoenix marketed Pfizer's pharmaceutical products in certain target cities.

Woodson started work at Phoenix as a sales representative in 1998. Her employment agreement defined her duties as promoting pharmaceuticals in assigned

---

1. Woodson named "Warner Lambert–Parke Davis, Inc." and "Parke–Davis, Inc." as defendants. There is no legal entity known as "Warner Lambert–Parke Davis, Inc." In the United States, Parke–Davis is a division of Warner Lambert Company, which is a wholly owned subsidiary of Pfizer, Inc.

territories. Phoenix assigned Woodson a territory in the Chicago metropolitan area that had a population in which minority groups predominated. Like the rest of Phoenix's sale force, Woodson is African–American. During the time that Woodson worked for Phoenix, the company never employed more than 13 people.

Woodson filed a complaint under 42 U.S.C. §§ 1981 and 1985 against Pfizer and Phoenix alleging that they conspired to discriminate against her on the basis of race and to impair her ability to make and enforce contracts. Pfizer and Phoenix moved to dismiss the complaint for failure to state a claim. The district court converted the dismissal motions into summary judgment motions and granted them.

Woodson also filed a claim against Phoenix based on the Age Discrimination in Employment Act (ADEA), but she withdrew it because the ADEA does not apply to entities that employ fewer than 20 people.

We review *de novo* a district court's grant of summary judgment, viewing the facts in the light most favorable to the nonmoving party. *See Gordon v. United Airlines, Inc.*, 246 F.3d 878, 885 (7th Cir. 2001). A grant of summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See id.*

The first issue we address is whether Woodson stated a claim against Phoenix or Pfizer under 42 U.S.C. § 1981. Woodson argues that Phoenix intentionally discriminates against African Americans by hiring only African Americans and restricting them to seeking business in minority sales territories. She also argues that Phoenix's refusal to assign her to predominantly white territories interfered with her ability to expand her sales territory, to increase her sales performance, to advance within

Phoenix in position and salary, and to gain experience in the market as a whole. Woodson also argues that, through its marketing agreement with Phoenix, Pfizer interfered with her ability to enter into contracts with white doctors.

Under 42 U.S.C. § 1981, all people within the United States have the same right in every state and territory as that enjoyed by white citizens to, among other things, make and enforce contracts. *See* 42 U.S.C. § 1981(a). The ability to make and enforce contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. *See* 42 U.S.C. § 1981(b). To state a claim under § 1981, the plaintiff must show (1) that she is a member of a racial minority, (2) that the defendant intended to discriminate against her on the basis of race, and (3) that the alleged discrimination concerned one or more of the activities enumerated in the statute. *See Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir.1996).

Woodson is an African American, so we move to the second factor, where she argues that both Phoenix and Pfizer intended to discriminate against African Americans through their agreement that Phoenix would market Pfizer's products in neighborhoods with predominantly minority populations. Woodson points out that Phoenix's entire sales force is African American, constituting something she calls "the flip side" of the "inexorable zero" factor that we referred to in *E.E.O.C. v. O & G Spring and Wire Forms Specialty Co.*, 38 F.3d 872, 878 (7th Cir.1994) (quoting *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 328 n. 23, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). Under the "inexorable zero" test, we held that when an employer with a statistically large enough workforce employs no African

Americans, we can infer that the employer intentionally discriminates against African Americans in its hiring decisions. Woodson argues that because Phoenix did just the opposite, hiring all African Americans, we should infer that Phoenix intentionally discriminated against African Americans.

This argument is simply illogical, especially given that two of Phoenix's goals are to provide scholarships and job opportunities to disadvantaged minorities. Even assuming that the "flip side of inexorable zero" theory had some merit, Phoenix's small number of employees makes statistical evidence of no value in proving an employment discrimination claim. *See Morgan v. Harris Trust and Sav. Bank of Chicago*, 867 F.2d 1023, 1028 (7th Cir.1989) (holding that sample size of 14 employees was statistically insignificant and therefore that it was not proper to infer discriminatory intent).

Woodson also failed to put forth any evidence that either Phoenix or Pfizer intentionally discriminated against her individually based on her race. Her real bone of contention seems to be Phoenix's marketing strategy of targeting urban communities in which minority groups dominate. Nothing in the plain text of § 1981 prohibits a company from selectively marketing to minorities. We do not sit in judgment on nor second-guess a company's business decisions. *See Dunn v. Nordstrom, Inc.*, 260 F.3d 778, 787 (7th Cir.2001). Therefore, Woodson failed to demonstrate intentional race discrimination.

Turning to the third factor, Woodson argues that Phoenix and Pfizer's marketing plan interfered with her ability to form contracts with white doctors. Her argument is undermined by two facts. First, Woodson hasn't put forth any evidence that she ever formed contracts with doctors in her individual capacity rather than as an agent of Phoenix. Second, Woodson put forth no evidence that her employment with Phoenix was exclusive or that it prevented her from entering into contracts with white doctors in her individual capacity as a third-party contractor. Woodson attempts to bolster her argument that the alleged discrimination related to the making or enforcement of contracts by relying on *Vakharia v. Swedish Covenant Hosp.*, 765 F.Supp. 461 (N.D.Ill.1991). There, the Northern District of Illinois denied the hospital's motion to dismiss the plaintiff's § 1981 claim for interference with her ability to make contracts with patients. It held that the plaintiff, an anesthesiologist, sufficiently alleged that she was able to obtain patients only through assignment by the hospital and referral by staff surgeons. *See id.* at 472. *Vakharia* is distinguishable from Woodson's case because the plaintiff there entered into contracts with patients in her individual capacity, not as an agent of the hospital. *See id.*

Therefore, because Woodson has not put forth any evidence that Pfizer and Phoenix intentionally discriminated against her, or that the alleged discrimination related to her ability to make and enforce contracts, she has not stated a claim under § 1981.

The second issue we address is whether Woodson stated a claim against Phoenix and Pfizer under 42 U.S.C. § 1985 for conspiracy to violate her civil rights. Under § 1985, two or more persons who conspire to deprive another of equal protection, privileges, and immunities under the laws may be liable in damages. *See* 42 U.S.C. § 1985(3). Section 1985(3) by itself provides no substantive rights, but merely provides a remedy for violations of the rights that it designates. *See Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). As we have discussed, Woodson failed to state a claim that either Phoenix or Pfizer violated her civil rights under

§ 1981. Therefore, her conspiracy allegation also fails.

The judgment of the district court is AFFIRMED.